Exhibit 17



*Law Office of Kevin P. McCann*
*137 S. Courtenay Pkwy, Ste 830*
*Merritt Island, Florida 32952*

*Telephone: (321) 222-3270*
*Fax: (321) 978-0302*

August 26, 2021

Kevin Maxwell, Esq.
Law Office of Kevin C. Maxwell
733 West Colonial Dr.
Orlando, FL 32804

      RE:    Legal Opinion of ATF Report of Technical Examination, dated 7/15/2021
              Classification of Rare Breed Triggers, model FRT-15

**Dear Mr. Maxwell:**

      Per your request, this letter serves as my legal opinion regarding the ATF Report of Technical Examination of Rare Breed Trigger's forced reset trigger device, model FRT-15, dated July 15, 2021. As a result of ATF's examination of the FRT-15, ATF concluded that the FRT-15 device is a combination of parts, designed and intended, for use in converting a weapon (AR-15 type) into a machinegun, and therefore it is a "machinegun" as defined by the National Firearms Act ("NFA") of 1934 and the Gun Control Act ("GCA") of 1968.

      ATF's Report of Technical Examination does not persuade me to alter my original legal opinion that the FRT-15 is not a "*machinegun*" since it does not fire more than one shot with a single function of the trigger. I further maintain my opinion that a rifle equipped with the FRT-15 utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and fires only one shot with each separate pull of the trigger, and is thus a "*semiautomatic rifle*."

      In support of ATF's classification of the FRT-15 as a machinegun, ATF relied on the NFA, the GCA, 27 CFR § 479.11, *Staples v. United States*, 511 U.S. 600 (1994), *Atkins* [sic] *v. United States*, 312 F. App'x 197 (11th Cir. 2009), *Freedom Ordnance Mfg., Inc. v. Brandon*, 2018 U.S. Dist. LEXIS 243000 (S.D. Ind. 2018), and *United States v. Fleischli*, 305 F. 3d 643 (7th Cir. 2002).

      In 1934, the definition of a machinegun was statutorily established by the NFA, which had remained as follows since that time: "*Any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*"

Exhibit 17

Kevin Maxwell, Esq.
Legal Opinion
Page 2 of 4

On December 26, 2018, under pressure from President Donald Trump to ban bump-stock firearm devices, without direction or act of Congress, ATF arbitrarily revised the long-standing statutory definition of a machinegun by adding two (2) sentences at the end of the above definition to read as follows, *"For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions. The term "machinegun" includes a bump-stock-type device, i.e., a device that allows a semiautomatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semiautomatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter."* (see 83 FR 66554, 27 CFR § 478.11, and 27 CFR § 479.11)

In ATF's Report of Technical Examination, ATF provides that, "Federal courts have long held that automatically means that the weapon 'fires repeatedly with a single pull of the trigger.' *Staples v. United States*, 511 U.S. 600, 602 n. 1 (1994). 'That is, once its trigger is depressed, the weapon will automatically continue to fire until the trigger is released or the ammunition is exhausted.' Id.". As provided by the FRT-15 patent and video simulation, as well as by the examinations by firearm technical experts Daniel O'Kelly, Richard Vasquez, and Brian Luettke, the trigger mechanism releases and resets with each function of the trigger, and firearms equipped with the FRT-15 do not fire more than one (1) round with a single function of the trigger. Thus, the FRT-15 does not satisfy the definition of a machinegun as provided in *Staples* and cited in the ATF Technical Examination Report.

In ATF's Report of Technical Examination, ATF provides that, "Federal regulation 27 CFR § 479.11, states that 'single function of the trigger' means a single pull of the trigger and analogous motions." As stated above, without direction or act of Congress, ATF arbitrarily rewrote the long-standing laws regarding machineguns as well as the definition of a machinegun, which include this language that in 2018 ATF itself codified in 27 CFR § 479.11. Although ATF is afforded deference to interpret, enforce, and provide regulations regarding Congressionally established laws, credibility is lost when ATF tries to rewrite the laws and revise the definition of a machinegun, now classifying and reclassifying long-standing non-machinegun devices as machineguns. Furthermore, there currently exists numerous meritorious challenges across the nation against ATF regarding this arbitrary revision of federal statutes and arbitrary classifications and reclassifications of long-standing non-machinegun devices into machineguns. Thus, citing its own language to support their classification of the FRT-15 is unreliable.

In ATF's Report of Technical Examination, ATF provides that, "Courts have specifically affirmed ATF's interpretation that a single act of the shooter to initiate the firing sequence is a single function of the trigger." According to Merriam-Webster's Dictionary, the definition of "initiate" is "to cause or facilitate the beginning of." Although it may take a single act of the shooter to "initiate" the firing sequence by a single function of the trigger, ATF did not provide any support for the continuation of the firing sequence beyond initiation. As provided in the FRT-15 patent and video simulation, as well as the expert technical examination reports of Mr. O'Kelly, Mr. Vasquez, and Mr.

Exhibit 17

Kevin Maxwell, Esq.
Legal Opinion
Page 3 of 4

Luettke, although the initiation of the firing sequence is provided by a single function of the trigger, the continuation of the firing sequence and every subsequent shot fired is provided by a separate function of the trigger.

In ATF's Report of Technical Examination, ATF provides that, "In *Freedom Ordnance* case, the United States District Court of Indiana confirmed that ATF was not arbitrary and capricious in the classification of an 'electronic reset assist device' as a machinegun even though the firearm's trigger reset before each shot by pushing the shooter's finger forward." ATF's Report of Technical Examination continues by providing, "In these cases (*Freedom Ordnance, Akins,* and *Fleischli* cases), a firearm is a machinegun when an internal mechanism or operation automatically forces the individual's finger forward instead of requiring that the shooter release the trigger." The opinion of the *Freedom Ordnance* case (3:16-cv-00243-RYL-MPB) is provided by and within the Entry on Cross-Motions for Summary Judgment (Document 34) in which Judge Richard L. Young, United States District Court, Southern District of Indiana, denied Freedom Ordnance's Motion for Summary Judgment and granted ATF's Motion for Summary Judgment. However, despite ATF's assertions in its Report of Technical Examination as provided above, Judge Young did not state anything about the firearm's trigger resetting before each shot by pushing the shooter's finger forward. Furthermore, none of the opinions in the *Freedom Ordnance, Akins,* and *Fleischli* cases provide that a firearm is a machinegun when an internal mechanism or operation automatically forces the individual's finger forward instead of requiring that the shooter release the trigger. ATF's Report of Technical Examination has misquoted these cases by asserting that a firearm is a machinegun if a mechanism forces the shooter's finger forward. These cases do not provide support for this assertion.

Any device that increases the fire of a semiautomatic firearm by providing more rapid but continued semiautomatic mechanics of the firearm is not a machinegun. For example, bump-firing may be accomplished without any device added to the firearm. As taught and demonstrated by many expert firearm shooters within ATF over the years, a semiautomatic firearm may be fired rapidly when the shooter provides forward pressure of the firearm with opposite rearward pressure of the trigger. Bump-firing occurs when the shooter's trigger finger is held in a stationary position while the shooter's support hand pushes forward on the firearm. The firearm's trigger is pushed into the shooter's finger as opposed to the normal process in which the finger presses the trigger. The gun then fires, and recoil moves the gun rearward. The pressure must be enough to pull the firearm forward and engage the trigger, but not so much that the recoil of the firearm isn't strong enough to move the firearm temporarily rearward removing the trigger from the finger. In a sense, the firearm is repeatedly recoiling away from the stationary trigger finger while the support hand is returning it forward to have the trigger pulled again. Although bump-firing results in rapid firing, it does NOT make the firearm a machinegun. This is because the firearm's trigger is being pulled once for every shot fired. Should ATF's revision of the definition of a machinegun stand, then all semiautomatic firearms must be reclassified as machineguns since they all can operate by bump-fire rapid shooting in the same manner as ATF is trying to prohibit, and each time that an ATF firearm expert engaged in bump-stock firing the expert illegally converted a firearm to a machinegun resulting in potential criminal prosecuting and seizure of the ATF firearm.

Exhibit 17

Kevin Maxwell, Esq.
Legal Opinion
Page 4 of 4

    As mentioned above, ATF re-wrote the statutory definition of a machinegun to include bump-stocks and other devices that increases the rate of fire of semiautomatic firearms in an attempt to arbitrarily make long-standing legal devices now illegal. ATF's intent to protect the public from a potentially dangerous item is understandable; however, ATF's current process of redefining machineguns and rewriting the laws is improper and contrary to the Constitution in which only Congress is tasked with establishing and modifying laws. The checks and balance system serves to prevent the Government from acting unconstitutionally, and the judiciary must review ATF's current arbitrary actions of rewriting long-standing laws and then reversing their enforcement efforts in manners inconsistent with its own history of enforcing laws and classifying firearms.

    Please let me know if you have any questions or require any additional information.

Very truly yours,

*Kevin McCann*

Kevin McCann, Esq.

Exhibit 17



**Firearms Training and Interstate Nexus Consulting, LLC**
5557 28th Street SE Ste 205
Grand Rapids, MI 49512

August 26, 2021

Kevin C. Maxwell, Esquire
Law Offices of Kevin C. Maxwell
255 Primera Blvd. Suite 160
Lake Mary, FL 32746

Dear Mr. Maxwell,

This report is a rebuttal to the ATF – Firearms and Ammunition Technology Division's (FATD) report identified as FTCB #2021-595-DAS dated 7-15-2021. After reading the FATD report, I have many questions regarding the apparent biased evaluation process, testing methodology, and overall lack of thoroughness that was used to evaluate Rare Breed Triggers FRT-15.

It appears Firearms Enforcement Officer (FEO) David Smith may have had a predetermined conclusion he was going to classify the Rare Breed Triggers FRT-15 as a machinegun from the very beginning of his evaluation. For example, on Page 2 under the heading "Findings" and subsequent heading "Exhibit 1", FEO Smith begins his initial description of the FRT-15 trigger and states "Exhibit 1 is a Rare Breed Triggers, model FRT-15…I observed that the Exhibit has no serial number in accordance with 26 U.S.C. § 5842." At the very beginning of FEO Smith's report and before he conducted any apparent evaluation or test firing of the FRT-15 trigger, he had already identified the FRT-15 as a machinegun within the purview of the National Firearms Act (NFA) of 1934 by claiming the trigger unit did not have a serial number "in accordance with 26 U.S.C. § 5842". A true unbiased initial description of the FRT-15 would have been sufficient to state it does not have a serial number and save the possible conclusion and NFA firearm marking requirements for the conclusion section of the report.

FEO Smith was accurate when on Page 3 he referenced the FRT-15 and stated "My examination determined Exhibit 1 does not function by "hammer follow"." However, he

Exhibit 17

felt it was necessary to describe other hammer follow machineguns as well as a machinegun that utilized an electronic switch (i.e. a minigun), all having nothing to do with how the FRT-15 semi-automatic trigger functions.

On Page 4 of FEO Smith's report, he states "Below is a description of how the Rare Breed Trigger, FRT-15 device operates with attached diagrams found on the Rare Breed Trigger website". FEO Smith used a description of the FRT-15 that was hard to follow due to the selected words and grammar. For instance, he wrote on Page 4 "As the bolt carrier moves to the rear, the hammer is driven into the top of the trigger forcing it forward. The bolt carrier then strikes the locking bar moving, [sic] it to lock the trigger in the forward position…As the bolt carrier continues to move forward, it strikes the rear surface of the locking bar releasing the trigger". A more descriptive sentence would have included stating the locking bar releases the trigger from its locked position, because it's important and accurate to identify the trigger is locked in position after each round of ammunition is fired and requires a separate function (a pull to the rear) for each round.

It is unclear whether or not FEO Smith actually held the FRT-15 trigger unit in his hands and simulated the function of it operating. If he did hold the FRT-15, he should have described that when the hammer is cocked and the trigger is reset in its forward position, the trigger is locked in position by the locking bar and cannot function until the cycle of operation is complete and the bolt carrier moves forward and releases the locking bar, which now allows the trigger to be pulled. This would have accurately described and demonstrated how the FRT-15 functions as a semi-automatic trigger.

FEO Smith wrote his report in the first-person point of view and when he actually does something like test firing, he wrote "I test-fired Exhibit 1". Did FEO Smith actually conduct a cycle of operation of the FRT-15 trigger unit while holding it? I did not see him writing about this in first-person in his report. I cannot imagine a person conducting a thorough evaluation of the FRT-15 and not simulate (while holding it) how it functions. With the hammer cocked, did he try to pull the trigger without any forward pressure on the locking bar and then with forward pressure on the locking bar? If he did not do it, he probably should have and I think this would have been an important process assisting him with making an unbiased opinion and would have demonstrated the semi-automatic function and the locking and unlocking of the FRT-15 trigger during the cycle of operation.

On Page 5, FEO Smith writes about his test-fire of the FRT-15. He writes "Finnaly [sic], I inserted a five-round ammunition load…pulled the trigger and held it to the rear…fired five (5) rounds automatically by a single pull/function of the trigger". I found this test firing statement inconsistent with what was written on Page 4 of his report regarding the actual function of the FRT-15. Is FEO Smith saying that during his test firing he was able to override the semi-automatic function, to include the locking bar of the FRT-15? Or is it probable the FRT-15 functioned as a semi-automatic trigger faster than his capability to realize he was in fact pulling the trigger after each round?

Furthermore, I did not see any reference that FEO Smith's FRT-15 test firing was video recorded with him pulling the trigger. On Rare Breed Triggers' website, they have a video

Exhibit 17

showing a shooter pulling the trigger for each round that is fired. Again, if FEO Smith did have a video recording showing him pulling the trigger for each round that he shot, it would have greatly aided him in making a better-informed decision on the classification of the FRT-15 as a semi-automatic trigger.

On Monday, August 16, 2021, I was sent two videos of FEO Smith test firing an AR-15 rifle equipped with an FRT-15 trigger. I do not know when this test firing took place as there is no date mentioned during the video. During this test fire, FEO Smith used a plastic zip tie as an apparatus to assist with pulling the trigger. Due to the angle of the camera and distance to the firearm, all it shows is the rifle firing. Again, if the evaluation of the FRT-15 was thorough, a more complete test would have involved having a video recording device set up to show the actual function of the trigger during the test firing. Rare Breed Triggers website shows this, why can't ATF show it?

Regarding the topic of FEO Smith using a zip tie in order to test fire the FRT-15, I find it interesting ATF would use the zip tie test on a semi-automatic trigger. On June 25, 2007 ATF issued a letter clarifying a previous letter which classified a shoestring as a machinegun. In the June 25, 2007 letter, ATF's Firearms Technology Branch (FTB) stated "when the string is added to a semiautomatic firearm as you proposed in order to increase the cycling rate of that rifle, the result is a firearm that fires automatically and consequently would be classified as a machinegun". So FEO Smith attempted to increase the cycling rate of the semi-automatic FRT-15 trigger to the cycling rate of a machinegun? According the June 25, 2007 letter, it seems the person who adds the "string" or in this case the zip tie is the person attempting to make a machinegun.

In conclusion, I think FEO Smith could have done a more complete and thorough evaluation of FRT-15 trigger. He glossed over the locking function of the trigger after each time the trigger is pulled and by doing so, his report left out the key factors as to why the FRT-15 is and should be classified as a semi-automatic trigger. Additionally, there was no video showing the function of the trigger while it is being used in a firearm. This would have shown (in part) the trigger being pulled to the rear, it resetting forward, and a subsequent pull of the trigger to the rear in order for the next round of ammunition to be fired.

Sincerely,

*[signature: Brian Luettke]*

Brian Luettke
Resident Agent/Owner FTINC, LLC

Exhibit 17

**Rebuttal statement of Daniel G. O'Kelly**

In ATF's Report of Technical Examination (UI #163080-21-0006) to Special Agent Michael T. Nuttall, I first noticed that they cite 28 CFR 0.130, adding that the Attorney General provides ATF with the authority to investigate, administer, and enforce the laws related to firearms. And pursuant to that, the Firearms and Ammunition Technical Division (FATD) "provides expert technical support" on firearms and ammunition to federal, state, and local law enforcement. However, shortly thereafter FATD "determines" that the item at issue is a machinegun, rather than merely offering their expert opinion as such. I find it disturbing that they offer their opinion as a determination because this "determination" is outside the scope of their authority. Any such determination is only within the authority of a court. Also, if FATD is going to offer "expert technical support", then that support should be in the form of expert technical opinions and should be based on facts and their ability to clearly interpret the elements called for in a definition within the U.S Code. However, they go on throughout the remainder of the report making "determinations" as though they are fact, while using vague and unclear terminology, often evading the pivotal point of the definition. They do so while making statements which are not only untrue but at times physically impossible. In their "Findings" on page 2, FATD cites the fact that "FTISB previously examine (sic) a "forced reset trigger" from (name redacted) (holder of U.S. Patent 10514223) and **determined** it to be a combination of parts, designed and intended for converting a weapon into a machinegun; and therefore a machinegun as defined in the GCA and NFA … (bold added)"

This citation is also obviously a leap in logic which is being offered as "support" for their later-stated opinion that the Rarebreed FRT is a "machinegun". The reason that I find this disturbing is the fact that ATF's FTISB, previously known as "FTB" has commonly reversed themselves months or even years later as to their opinions of other items as firearms under the purview of the NFA, and then back again in some cases[1]. In this respect, how can logic dictate that item B should be classified as something because item A previously was, since item A can later be re-classified as something else? Also, I find it disturbing that ATF takes so much liberty with the use of the words "classify" and "classification" as they refer to a device or item. While it is the Court which is the finder of fact, ATF serves to give opinions as to which definition or "class", if any, an item falls according to the definitions in the CFR and the U.S. Code. They are supposed to do this according to their training and experience by applying the required elements contained in a given definition, and by further taking notice of the adjectives and adverbs found in said definition which further qualify a given element(s). However, the "classification" of an item as to whether it satisfies a given definition is an act which can be performed by anyone with enough command of English to read the definition in detail and comprehend its nuances, along with enough knowledge of the mechanical features of the item in question. This is a feat easily done by may laypersons and especially by those in the firearm industry. However, due to the lack of one or both of

---

[1] On 11/26/12 ATF's FTB letter to Alex Bosco (903050:MMK, 3311/2013-0172) stated that a forearm brace does not alter the classification of the firearm and would not be subject to the NFA, although the intentional shouldering of the brace would. Then on 3/5/14, ATF's FTB letter to Sergeant Joe Bradley (903050:AG 3311/301737), stated that even the intentional shouldering of a brace-equipped firearm would not violate the NFA. Then on 10/28/14, ATF's FTB letter to Eric Lemoine (907010:MCP, 3311/302492) again stated that should a person shoulder a brace as a stock, that it would be "classified" as a firearm within the NFA. Then on 3/21/17, ATF's FTB letter to Mark Barnes, Esq. (90000:GM 5000), stated that shouldering a forearm brace is "not necessarily a violation". Then on 6/10/21 ATF filed an NPRM in the Federal Register, proposing to make braces fall within the NFA.

1

Exhibit 17

these abilities, individuals and companies have acquiesced to ATF for decades, asking them to make such "determinations" or "classifications" for them. In years of being a paid Consultant for a number of licensed firearm manufacturers, I have repeatedly seen FATD take great advantage of the opportunity to get away with "classifying" or "ruling" items to be something that it does not satisfy the definition of. They are often completely subjective in their findings. This has clearly been the result of the latitude that FATD has been afforded by those with insufficient knowledge to apply the item to the definition themselves. Countless times FATD has taken advantage of the opportunity to call something as they prefer it be classified when either no one knew better, or was afraid to challenge them, or could not afford to due to because ATF has numerous Attorneys on salary who can bankrupt a challenger who would need to pay enormous legal fees. Too often, FATD also says that they determine something to be an NFA firearm based on elements which do not even appear in said definition[2].

Further in ATF's "Findings" in the second paragraph on page 3, they make a statement that the item covered in U.S. Patent 10514223 does not function by "hammer-follow". I find this issue disturbing as it is being offered as a "red herring". Even firearms which do experience "hammer-follow"[3] merely jam in most cases. Although a firearm which does fire more than one shot with a single function of the trigger due to hammer-follow would qualify as a machinegun, hammer-follow itself is not illegal.

At the end of the fourth paragraph on page 3 ATF incorrectly quotes the definition of a machinegun in their favor by saying that "Machinegun classifications are based on … whether the device converts a weapon to shoot automatically." Here they have conveniently left out the phrase of the definition which adds," … by a single function of the trigger". This is especially disturbing because the missing phrase is the key difference between what ATF alleges that the FRT does and what it in fact does. That is, fire fewer than one shot per function of the trigger.

In the fifth paragraph on page 3, ATF erroneously explains the meaning of the word "automatically" as it is defined in 27 CFR 479.11. Mr. Curtis states that "automatically" "means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger". As true as that may be, it has no application to the FRT. The FRT requires two separate functions of the trigger to fire each shot. Despite the fact that the FRT automatically assists the resetting of the trigger to the ready position, the FRT still requires a second manual and intentional function of the trigger, on the part of the shooter, to fire each shot. The FRT does not shoot automatically. He only thing that it does automatically is to reset its trigger to the ready position. In order for an item to qualify as a machinegun within the specified definition it must satisfy all of the several qualifiers in the definition. For example, the adverb "automatically", describes how the weapon must shoot. The adjectival phrase "more than one shot" describes what it must shoot. And further, the weapon must do these qualified things "without manual reloading". Finally, it must do all of the aforementioned actions "by a single function of the trigger". ATF Chief Counsel's Office has repeatedly

---

[2] FATD letter to Standard Manufacturing re the DP12 being a Destructive Device because it weighs eleven pounds.
[3] Hammer follow is a condition which may occur in a malfunctioning semiautomatic firearm, wherein the hammer can fail to remain in the cocked position during cocking, and then ride the bolt forward. In some cases, this can cause chain-firing and result in the gun becoming a machinegun as defined in 26 USC 5845. It most cases it only results in a jammed firearm which must be cleared before firing a subsequent shot.

2

Exhibit 17

determined that "a single function of a trigger means a single movement of a trigger.[4]" The below email was addressed to me as well as to hundreds of other ATF personnel at the time.

*From: Galbraith, A.*
*Sent: Friday, March 20, 2009 8:51 AM*
*To: Turner, R.; TPD-NEXUS*
*Subject: A system that fired upon release of the trigger also.*
*All,*

*FTB looked at the original device back in the day. As long as the gun only fires one shot on the pull and one on the release, it is NOT a machinegun. The ATF-counsel-approved interpretation of "single function of the trigger" is a single movement of the trigger, making systems like this OK.*
*A. Galbraith*

*Firearms Enforcement Officer*
*Firearms Technology Branch*
*244 Needy Road, Suite 1600*
*Martinsburg, WV 25405*

Since that time, Franklin Armory has developed and marketed their BFS Binary Triggers©. A Binary Trigger© is an ATF-approved trigger system which allows a firearm to fire one shot upon the pull function of the trigger, and another shot upon the release function of the trigger. FATD has considered this to be a legal and semiautomatic device since approximately 2015. Extremely fast follow up shots can be fired with a Binary Trigger©, which only requires one function of the trigger per shot fired, however ATF has an issue with the FRT which requires two functions of the trigger per shot fired. I find it very arbitrary that ATF has a problem with a device which requires twice the trigger functions per shot as one which they consider perfectly legal, let alone the fact that the FRT does not satisfy the definition.

In his examination report, Mr. Smith references a letter, regarding a different trigger, from Mr. Curtis. In his letter Mr. Curtis cites Staples vs. United States by pointlessly saying that "...once it's trigger is depressed the weapon will automatically continue to fire until it's trigger is released or the ammunition is exhausted." Here he is playing with the various connotations of the word "pressed". At risk of being redundant, upon "functioning" the trigger of an FRT by moving it rearward from the ready position to the fire position, the weapon only fires one shot. To fire a second shot, the shooter must wait for the FRT to force the trigger forward into the ready position. Only then can the shooter fire another shot by again pulling (functioning) the trigger to the rear, causing it to release the hammer. As a result of the design of the FRT, two separate functions of the trigger must occur for each shot fired. This is double the number of functions required for legal semiautomatic firing[5]. Mr. Curtis, in his *Staples* quote, attempts to use the word "depressed" as though it means "functioned". I notice throughout the ATF Report that

---

[4] See email from ATF FEO Adam Galbraith on 3/20/09 at 8:51am to Richard Turner and all ATF-trained Interstate Nexus Agents (TPD-Nexus).

[5] Compare to a machinegun, which fires two or more shots for each time the trigger performs the single function of releasing the hammer. Further, compare it to the Binary© type of legal semiautomatic triggers which fire a shot upon functioning the trigger to the rear, and fire another shot by functioning the trigger forward to the ready position.

3

Exhibit 17

the words "pressure", "pull", and "depressed" are used as though they are synonymous with "function". They are not. Function is defined as *"an activity or purpose natural to or intended for a person or thing. Verb: Work or operate in a proper or particular way[6]."*

With an FRT, the shooter may exert constant "pressure" against the trigger, although the trigger cannot be "pulled" (moved) to the rear again until after each time it is forced forward by the hammer, at which point it can be "functioned" again by intentionally moving it to the rear with the finger. Constant pressure on a trigger does nothing. It is akin to leaning against a locked door until someone unlocks the door from the other side, which then allows the door to be pushed open by the weight leaning against it. It is only then that the weight of the person who is leaning against it functions the door to the open position. Upon the person falling through the then open door, the door is again forced closed, and locked by a mechanical apparatus (e.g. FRT's locking bar). During this time, another person leans against the door waiting for it to be unlocked so that their weight allows them to fall through it once unlocked.

Mr. Smith then cites the Freedom Ordnance 3:16-cv-00243-RLY-MPB case, stating that " ... a firearm is a machinegun when an internal mechanism or operation automatically forces the individuals finger forward instead of requiring that the shooter release the trigger." Again, there is nothing in the National Firearms Act to support this. The definition of a machinegun makes no such claim. This is yet another example of FATD's decades long practice of insisting that items fall within definitions which they clearly do not satisfy the elements of[7]. The word "automatically" is used in the definition to describe how the gun must shoot. That is, <u>with a single function of the trigger.</u> The FRT's trigger's return to the reset and forward position is forced by the FRT's hammer, but this movement (function) is still a "release". The definition says nothing about requiring the shooter to "release" or to remove their finger from the trigger.

At the top of page 4, Smith erroneously states that "If a device is designed to assist in preventing the hammer from positively resetting or which utilizes a spring, electric motor or non-manual source of energy which assists in the automatic resetting of the hammer and causes the firearm to shoot automatically more than one shot, without manual reloading, by a single function of the trigger, such an item or device would be classified as a combination of parts designed and intended, for use in converting a weapon into a machinegun; ... " Firstly, this verbiage is not found in any definition of a machinegun within the U.S. Code. It is merely another example of FATD writing their opinion to suit a situation. Additionally, the FRT does none of these things. It does not "assist in preventing the hammer from resetting". In the FRT the hammer positively resets and re-engages with the trigger after each shot. Secondly, every semiautomatic firearm ever made utilizes a "non-manual source of energy which assists in the automatic resetting of the hammer". That is the energy generated by burning gunpowder to drive

---

[6] Google.

[7] From 1968 to 2021 ATF insisted that a part of 60% of new firearms on the market have a part which qualifies as a firearm "frame or receiver" as defined in 27 CFR 478.11. However, based on my testimony in the Lycurgan, Jiminez, Roh, and Rowold/Robison cases, Attorney General Loretta Lynch notified Speaker of the House Paul Ryan in 2015 that ATF needed to correct the issue. ATF took no action. In 2018 Judge Selna, and in 2020 Judge Carr, ruled that ATF was wrong. In June of 2021 ATF finally filed a New Proposed Rulemaking in the Federal Register to change the definition of a "frame receiver" to include the previously referred to parts. The process is ongoing.

4

the bolt or breechblock[8] to the rear, which in turn causes the reset of the hammer by its reengagement with the trigger[9]. This is a non-manual source of energy, so if FATD's above position were to be given merit, then every semiautomatic firearm in the U.S. would be deemed a machinegun. Further, the phrase "and causes a firearm to shoot automatically more than one shot" precludes the FRT from FATD's position because it does not shoot more than one shot per function of the trigger.

On page 4, 8th paragraph, Mr. Smith states that "This differs from a cycle of eoprations (sic) in a typical AR-type semiautomatic firearm in which the shooter must release and pull the trigger to fire a second projectile". His statement here is misleading, because in a typical AR-type firearm, the shooter does not have to release the trigger to allow the trigger to reset. The trigger resets due to the fact that it is under spring pressure to return to the forward position. In fact, the trigger-return spring in a typical AR-type firearm performs the same function as the FRT hammer. It returns the trigger to the forward/reset position. The only difference between the way the typical system works vs. the FRT is the amount of force with which the trigger is forced forward. The shooter must only lessen the pressure that he/she is exerting against the trigger in a typical AR-type firearm to allow the spring to do its job. The finger is never required to break contact with the trigger. In an FRT the hammer performs the movement (function) of returning the trigger to the forward position without the need for the shooter to break contact with the trigger.

Mr. Smith continues by saying that "... a firearm assembled with the FRT requires no such release and subsequent pull by the shooter to fire a second projectile. ... the shooter may fire a second projectile merely by maintaining the initial trigger pull and allowing the self-acting internal mechanism to complete its automatic cycle of operation". Although Mr. Smith is correct that an FRT equipped firearm doesn't require a "release" (break in contact from the finger) with the trigger to fire a subsequent shot, it does require the trigger to <u>function</u> by moving back to the reset position before firing another shot. However, he is incorrect by stating that the "shooter may fire second projectile by maintaining the initial trigger pull." This is physically impossible, due to the forced return (function) of the trigger to the reset position by the steel hammer, and then by the locking bar which holds it locked into that position until the cycle of firing that shot is complete. In this instance ATF again takes liberty in blurring the lines between "pull", "pressure", and "function". The truth is, that a shooter of an FRT may maintain pressure on the trigger throughout the firing of a string of several shots, but even then, the trigger functions to release the hammer and then functions to reset the hammer/trigger for each shot fired. Of course, the shooter must consciously cause one of these functions to occur for each shot.

The most disturbing statement in Mr. Smith's' entire report is on page 5 in the second paragraph. He describes his test-firing of the FRT, stating that he "...fired two rounds automatically with a single pull/function of the trigger" and that he repeated this an additional time. The reason that I say this statement is so disturbing is because his claim is physically impossible. Unless he was test-firing some other device, this could not have occurred. As I've previously stated, every time an FRT-equipped firearm fires a shot, the trigger is forced to return to the forward reset position where it began before

---

[8] Depending on it's design, every firearm utilizes either a bolt or breechblock to support the rear of a cartridge upon firing. This support prevents pressure from moving rearward until after the bullet exits the barrel and prevents injury to the shooter.

[9] Some semiautomatic firearms utilize a striker instead of a hammer. A striker is a spring-loaded firing-pin which is released from the cocked position by the sear upon a function of the trigger.

5

firing. Resultingly, during a string of rapidly fired shots, the shooter will physically feel his finger moving rearward and forward once each, for each shot fired. This movement is approximately .13 inch both fore and aft. It is imperative to note here that firearms are precise machines which rely on extremely close tolerances in order to function, and to do so safely. There is no measurable "play" or "stretch" in an operable firearm. The trigger of an FRT must make this movement both aft and then again forward for each shot fired. Therefore, I'm at a loss as to how Mr. Curtis can make this impossible claim. As such, Mr. Smith should reconsider this statement before testifying to it under oath. In the next paragraph, he claims to have fired 5 shots "by a single function of the trigger". This is again physically impossible as the trigger would have made the above-described movements (functions 2 time for each shot fired).

I note that this is the first time that ATF acknowledges the "pull" of a trigger as a function. This is a double-edged sword however, because Mr. Smith, and FATD in general, is noticeably liberal in their usage of the various connotations of this word "pull" as it suits their collective aim. I offer that a person can "pull" or add "constant pressure" on the knob of a locked door without causing a "function" to occur, whereas one can also "pull" or add "constant pressure" on the same door when not locked and effect the "function" of opening or closing the door in the process. Likewise, a person can or add "pressure" onto the steps of an escalator by stepping onto it. Yet the escalator continues to perform the "function" of moving the person up or down the incline by working against that pressure. There is a huge difference between "pull", "pressure" and "function", which is exactly why writers of the definition chose to use "function" as the definitive issue concerning what a trigger must do.

In referencing a prior examination of a different trigger, On page (46) Mr. Curtis states in the last sentence on the page that "... a single constant rearward *pull* will cause the firearm to fire until the trigger is released, the firearm malfunctions, or the firearm exhausts its ammunition supply." (italics added) Here is yet another misleading statement which is poorly worded, in an effort to support FATD's position. Not to mention the fact this is not an examination of the FRT-15. The accurate way to have stated this would be "a single rearward movement will cause the trigger to function twice for each shot fired, by repeatedly functioning the release of the hammer, and then functioning to reengage the hammer with the trigger." In summary, ATF regularly confuses the issue by saying "pressure" where it is immaterial because "function" is the issue. At other times ATF uses the word or "pull" despite the fact that they are referring to a pressure which is causing no function.

Again referencing a examination of a trigger which is not the FRT-15, On page (50), Mr. Curtis states in the second paragraph that "...after firing several cartridges the sear failed to retain the hammer which simply followed the bolt forward leaving a substantial firing-pin mark on the primer of the chambered cartridge without firing the cartridge." Here I fail to see the point, as this merely resulted in a stoppage, commonly known as a "jammed gun". This is hardly a violation of the U.S. Code or a public safety issue. It would only be of consequence if the gun had fired multiple shots as a result.

Again referencing a examination of a trigger which is not the FRT-15, On page (51) Mr. Curtis describes a test-firing sequence wherein ATF modifies the gun by attaching a zip-tie around the trigger. This is a laughable demonstration because it has nothing to do with ATF's erroneous assertion that the FRT fires more than one shot by a single function of the trigger. Zip-ties have nothing to do with the FRT. If a person were to modify a firearm from its original legal design by redesigning it as a machinegun as defined in 26 USC, then the criminal violation would have been committed by the modifying individual. This "test" also gives no acknowledgement to the fact that a plastic zip-tie has some degree of elasticity

6

Exhibit 17

and that the installation of one as depicted still allows the firing to occur as a semiautomatic, with one shot being fired with at least one function of the trigger occurring each time. Further, if such a modified firearm were received from the field by FTSIB for determination, they would "classify the zip-tie as the machinegun, as they have other items in the past, such as shoestrings, pieces of a coat hanger, etc... In such cases their determination is that the item has been redesigned as an item solely intended for use in converting a weapon into a machinegun, under the third definition of a machinegun in 26 USC 5845(b). In fact, any, and every semiautomatic firearm can be modified to fire fully-automatically. However, this doesn't make every semiautomatic a machinegun.

Again referencing a examination of a trigger which is not the FRT-15, On page (52), Mr. Curtis states in paragraph 2 that " ... ATF has long held that a single function of the trigger is a "single pull" or alternatively, a single release of a trigger." Here FATD's statement fully supports my earlier point about Binary Triggers©. The ATF stated position clearly supports that either a function of the trigger to the rear for each shot fired is legal, or alternatively, a single function of the trigger forward is alone sufficient for the FRT to be recognized as a legal semiautomatic. Therefore, the FRT could ironically fire two shots for each pull and return of the trigger, regardless of the fact that it is mechanically returned to the reset position, and still be legal. Yet FATD erroneously argues otherwise.

Again referencing a examination of a trigger which is not the FRT-15, In paragraph 4 of page (52), Mr. Curtis begins by citing that "Federal courts have noted that automatically means the weapon "fires repeatedly with a single pull of the trigger"". Still, he blurs the issue with the use the word "pull". No firearm fires by merely adding pressure to a trigger without that trigger actually moving a distance. So, "pull" certainly does not mean "add pressure without movement". Clearly, the federal courts have intended the word "pull" to mean a movement which causes a function therefore we see the word "function" in the definition. Once again, the FRT fires one shot per rearward movement/function of the trigger.

Again referencing a examination of a trigger which is not the FRT-15, At the start of paragraph 5 on page (52), Mr. Curtis falsely states "FTISB testing indicated that continuous rearward pressure after the initial pull of the trigger initiates a "firing sequence" which discharges multiple rounds with a single function of the trigger." I can only shake my head at such an outlandish claim. The facts are that maintaining rearward pressure on the trigger after the initial pull of the trigger, initiates the repetition of a cycle wherein the firing of one shot occurs with each time the trigger is functioned aft and then functioned forward.

Finally in referencing a examination of a trigger which is not the FRT-15,, on page (53) in paragraph 2, Mr. Curtis says that "A device designed to prevent the hammer from positively resetting could cause a firearm to shoot automatically more than one shot, without manual reloading, by a single function of the trigger, and would also be classified as a combination of parts designed and intended, solely and exclusively, for use in converting a weapon into a machinegun;..." I'm at a loss to see his point here as he again attempts to use technical descriptions and definitions which have zero applicability here. The hammer in an FRT absolutely makes a positive reset by interlocking with the trigger after each shot fired. Further, how does he propose to call something illegal by virtue of what it "could do"? Obviously, a baseball bat "could" be used as a deadly weapon, but until or unless it is that doesn't make them illegal. Even further, an FRT fires one shot per two trigger functions, let alone one per trigger function

7

Exhibit 17

(i.e. Binary Triggers©), let alone more than one shot per trigger function (i.e. machineguns). Lastly, since an FRT <u>does not</u> convert a firearm into a machine gun, it is not designed and intended for that purpose.

I reserve the right to amend my report.

_____   _____8/26/21_____
Daniel O'Kelly                                   Date

8

Exhibit 17

August 26, 2021

**VIA E-MAIL ONLY**
**kevincmaxwell@gmail.com**

Kevin C. Maxwell, Esquire
Law Offices of Kevin C. Maxwell
733 West Colonial Drive
Orlando, Florida 32804

Subject: Rare Breed FRT-15 Rebuttal

Dear Kevin:

My consulting firm, Rick Vasquez Firearms, LLC was asked to provide an opinion concerning the classification of Rare Breed Triggers model FRT-15 trigger by ATF as a machinegun. This classification is found in FTCB# 2021-595-DAS 317066 in which ATF FTISB has classified the FRT-15 as a machinegun.

As part of my research and analysis, I have reviewed a Rare Breed Trigger installed in a firearm, along with an animated video on the operating principles. Provided to me for review were videos demonstrating how the FRT-15 works side by side of a Giessele trigger of the same design that ATF classified as a non-machinegun. While an employee of ATF and as the Acting Branch Chief of the Firearms Technology Branch I wrote opinions and classifications on machineguns, to include the Akins Accelerator. I additionally reviewed previous ATF Firearms Technology Branch rulings on machineguns and rate of fire increasing triggers and utilized my extensive experience in firearms technology classification related matters.

I. **LEGAL DEFINITIONS AND BACKGROUND:**

Under 18 U.S.C. § 921(a)(3), the Gun Control Act of 1968 ("GCA") defines the term "firearm" to include "any weapon (including a starter gun) which will or is designed to or may be readily converted to expel a projectile by the action of an explosive … [and] … the frame or receiver of any such weapon…" Moreover, under 26 U.S.C. § 5845(b), the National Firearms Act of 1934 ("NFA") defines "machinegun" to include "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically <u>more than one shot,</u> without manual reloading, <u>by a single function of the trigger.</u> This term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." (emphasis added). Thus, the question presently under consideration is whether the Rare Breed Triggers FRT-15 falls within the definition of "machinegun" under the NFA.

II. **APPLICATION AND ANALYSIS:**

As a preliminary matter, it has long been ATF's position (dating back to the late 2000) that semi-automatic rifles that did not use electronics, springs, or hydraulics to reset the trigger were not

Exhibit 17

RICK VASQUEZ FIREARMS, LLC
August 26, 2021, Page 2 of 3

machineguns. The FRT-15 has a redesigned trigger, hammer, and a locking bar that functions as a disconnector. This system forces the trigger to mechanically reset and allows the shooter to pull the trigger in a rapid movement.

The FTISB report provided is very heavy on statutes and previous case law but light on explaining the Rare Breed trigger. For example, this trigger is not electric or an electrically fired minigun as one of the cited cases, nor does it have hydraulics or spring as cited in the Akins case. The pertinent information is the description of the method of operation. The FTISB description of operation is cited and clarified

FTCB# 2021-595-DAS 217066 "Below is a description of how the Rare Breed Trigger, FRT-15 device operates with attached diagrams found on the Rare Breed Trigger website.

First, the FRT-15 device must be installed into an AR 15-type weapon which includes a H3 weight buffer and M 16-type bolt carrier. These components are necessary because the specific design of the FRT-15 requires these to function as designed.

The picture on page 4 of the attached, shows the position of the hammer (orange), trigger (red), and locking bar (green) in the FRT-15 device once the weapon is charged and the selector is placed in the fire position. In this configuration, the hammer is held in place with its sear surface against the front of the trigger.

When the trigger is pulled (rearward pressure applied to the trigger), the hammer is released and strikes the firing pin, igniting the cartridge primer, and starting the cycle of operations (See attachment page 5 picture 7).

As the bolt carrier moves to the rear, the hammer is driven into the top of the trigger forcing it forward. The bolt carrier then strikes the locking bar moving, it to lock the trigger in the forward position (See attachment page 6 picture 8).

As the bolt carrier moves forward, the trigger is held in the forward position by the locking bar and the hammer engages the sear surface on the front of the trigger (See attachment page 7 picture 9). As the bolt carrier continues to move forward, it strikes the rear surface of the locking bar releasing the trigger. If the shooter maintains constant rearward pressure to the trigger, that single constant pull will continue the cycle of operation and fire a subsequent projectile. (See attachment page 8, 9 picture 1 0, 1 1). This differs from a cycle of operations in a typical AR-type semiautomatic firearm in which a shooter must release and pull the trigger to fire a second projectile. As stated, a firearm assembled with the FRT-15 requires no such release and subsequent pull by the shooter to fire a second projectile. Instead, the shooter may fire a second projectile merely by maintaining the initial trigger pull and allowing the self-acting internal

Exhibit 17

RICK VASQUEZ FIREARMS, LLC
August 26, 2021, Page 3 of 3

mechanism to complete its automatic cycle of operation."

The areas from the FTISB report in red are critical missteps by FTISB whether purposeful or not; we do not know. When the bolt comes to the rear, it cocks the hammer, which forces the trigger to reset in the forward position allowing the trigger finger to travel forward, and the blocking bar (disconnector is engaged) captures the trigger. At this time the hammer is still engaged. As the bolt carrier goes forward, it trips the blocking bar leaving the trigger and front of the hammer engaged. The blocking bar does not work as an automatic sear trip. If the shooter applies continued rearward pressure on the trigger, it will fire again with a single function of the trigger. If the shooter applies too much pressure, the cycle of operation is interrupted.

If the shooter releases the trigger, it ceases firing. This is no different than the Giessele Trigger (that ATF has approved) demonstrated in the video provided. The mechanics of the trigger components are the same. The video demonstrates how each trigger is pushed forward, pushing the shooters finger forward and then the trigger finger pulls the trigger causing the firearm to fire one shot. The FRT-15 trigger works simply as a rapid reset device allowing for rapid firing. This is not automatic firing as ATF has previously explained.





III. **CONCLUSION:**

The trigger works simply as a rapid reset device allow for rapid firing. This is not automatic firing as ATF has previously explained. The mechanics allow for a rapid reset and pulling of the trigger. The videos provided and missteps in the FTISB report clearly demonstrate that FTISB either deliberately attempted to mislead and obfuscate, or simply does not perform historical research and comparisons when making opinions. My previous opinion not only still

Exhibit 17

RICK VASQUEZ FIREARMS, LLC
August 26, 2021, Page 4 of 3

stands but is more strongly confirmed. The FRT trigger system is a self-contained trigger assembly with a redesigned hammer, trigger, and locking bar (disconnector).
The FRT trigger system does not have an automatic sear, nor does it operate by electronics, springs, or hydraulics, therefore, is not a "machinegun". Additionally, there is no verifiable history of ATF opinions to support this trigger being classified as a machinegun, both in general and specifically pertaining to the underlying design.

Please contact me with any questions or concerns that you may have or should you require any clarification of me opinion. <u>This letter and the opinions contained therein are intended solely for your law firm and your client and are not to relied upon by any other individual or entity for any purposes.</u>

Very truly yours,

Rick Vasquez