UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

RARE BREED TRIGGERS, LLC,

      Plaintiff,

  v.

Case No. 3:22-cv-00085-ARS

MERRICK GARLAND, in his official
capacity as Attorney General of the United States, *et
al.*,

      Defendants.

_____/

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
UNDER RULES 12(b)(1), 12(b)(3), AND 12(b)(6), OR,
<u>IN THE ALTERNATIVE, TO TRANSFER VENUE</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

I.     Statutory and Regulatory Background ...................................................2

II.    Factual and Procedural Background .......................................................3

     A.    Events Prior to the First Litigation ...........................................3

     B.    Proceedings in the First Litigation ...........................................7

     C.    Events After the First Litigation ...............................................9

LEGAL STANDARD ..........................................................................................10

ARGUMENT .......................................................................................................12

I.    Plaintiffs' Complaint Should Be Dismissed for Lack of Venue or Transferred to a Proper Venue ......................................................................................12

     A.    Venue Is Not Proper in This District ......................................12

     B.    Transfer Is Appropriate Even if Venue Is Proper in This District ..............17

II.    Plaintiff Lacks Standing to Challenge the Bump-Stock Regulation ....19

III.    Plaintiff Has Not Stated a Claim for Relief on the Merits ...................20

     A.    The FRT-15 Is a Machinegun .................................................20

     B.    The Statute Is Not Unconstitutionally Vague .........................26

     C.    ATF Did Not Violate Plaintiff's Procedural Due Process Rights ...............29

     D.    Plaintiff's 19 U.S.C. § 1610 Claims Should Be Dismissed ....32

IV.    Declaratory Judgment Would Not Be Appropriate ..............................35

CONCLUSION ....................................................................................................35

i

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Abels v. Farmers Commodities Corp.*,
  259 F.3d 910 (8th Cir. 2001) ................................................................................................3

*Adventist Health Sys./SunBelt, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
  17 F.4th 793 (8th Cir. 2021) ...............................................................................................12

*Akins v. United States*,
  82 Fed. Cl. 619 (Fed. Ct. Cl. 2008) ....................................................................................24

*Akins v. United States*,
  No. 8:08-cv-988, 2008 WL 11455059 (M.D. Fla. 2008) ............................................. 12, 30

*Akins v. United States*,
  312 F. App'x 197 (11th Cir. 2009) ......................................................................................21

*Aposhian v. Barr*,
  958 F.3d 969 (10th Cir. 2020), *opinion reinstated,* 989 F.3d 890 (10th Cir. 2021), *pet. for cert. filed,* No.
  21-159 (U.S. 2021)..............................................................................................................22

*Ariz. Yage Assembly v. Barr*,
  No. 3:20-cv-03098-WHO, 2020 WL 5629833 (N.D. Cal. 2020) ........................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................11

*Becerra v. Empire Health Found., for Valley Hosp. Med. Ctr.*,
  142 S. Ct. 2354 (2022)........................................................................................................22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................................11

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
  403 U.S. 388 (1971)...............................................................................................................8

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988).............................................................................................................34

*Brewer v. SmithKline Beacham Corp.*,
  774 F. Supp. 2d 720 (E.D. Pa. 2011)..................................................................................15

*Camp v. Pitts*,
  411 U.S. 138 (1973).............................................................................................................31

*Cargill v. Barr,*
  502 F. Supp. 3d 1163 (W.D. Tex. 2020), *aff'd sub nom., Cargill v. Garland,* 20 F.4th 1004 (5th Cir. 2021), *reh'g en banc granted, opinion vacated,* 37 F.4th 1091( 5th Cir. 2022)......................................22, 27

*Castillo v. Ridge,*
  445 F.3d 1057 (8th Cir. 2006)..................................................................................34

*Cf. Block v. Cmty. Nutrition Inst.,*
  467 U.S. 340 (1984).................................................................................................34

*Cf. E.L. by White v. Voluntary Interdistrict Choice Corp.,*
  864 F.3d 932 (8th Cir. 2017)....................................................................................20

*Chickasaw Nation v. United States,*
  534 U.S. 84 (2001)...................................................................................................27

*Collins v. Yellen,*
  141 S. Ct. 1761 (2021).............................................................................................19

*Cox v. Louisiana,*
  379 U.S. 559 (1965).................................................................................................27

*E.W. Wylie Corp. v. Transp. Tech. Servs., Inc.,*
  No. 3:11-cv-47, 2011 WL 13111712 (D.N.D. 2011)...............................................11

*Edelman v. Lynchburg College,*
  535 U.S. 106 (2002).................................................................................................22

*Falk v. U.S. ex rel. Dep't of Interior,*
  452 F.3d 951 (8th Cir. 2006)....................................................................................12

*FCC v. Prometheus Radio Project,*
  141 S. Ct. 1150 (2021).............................................................................................12

*Fischer v. First Nat. Bank of Omaha,*
  466 F.2d 511 (8th Cir. 1972)....................................................................................16

*Fla. Power & Light Co. v. Lorion,*
  470 U.S. 729 (1985).................................................................................................18

*Freedom Ordnance Mfg., Inc. v. Brandon,*
  No. 3:16-cv-243, 2018 WL 7142127 (S.D. Ind. 2018) .....................................12, 22

*FTC v. Standard Oil Co. of Cal.,*
  449 U.S. 232 (1980).................................................................................................34

*Grayned v. City of Rockford,*
  408 U.S. 104 (1972).................................................................................................27

*Guedes v. ATF*,
  356 F. Supp. 3d 109 (D.D.C 2019) *aff'd*, 920 F.3d 1 (D.C. Cir. 2019) *cert. denied*, 140 S. Ct. 789
  (2020) ........................................................................................................................... 22, 25

*Gulf Ins. Co. v. Glasbrenner*,
  417 F.3d 353 (2d Cir. 2005) ...................................................................................................11

*Gun Owners of Am. v. Barr*,
  363 F. Supp. 3d 823 (W.D. Mich. 2019), *aff'd by equally divided court sub nom. Gun Owners of Am. v.*
  *Garland*, 19 F.4th 890 (6th Cir. 2021), *pet. for cert. filed*, No. 21-1215 (U.S. 2022) ...................... 22, 27

*Gun Owners of America v. Garland*,
  992 F.3d 446 (6th Cir. 2021) ........................................................................................... 24-25

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) ...................................................................................................... 14, 16

*Ikelionwu v. United States*,
  150 F.3d 233 (2d Cir. 1998) ...................................................................................................35

*Keeny v. Sec'y of the Army*,
  437 F.2d 1151 (8th Cir. 1971) ...............................................................................................34

*King v. Russell*,
  963 F.2d 1301 (9th Cir. 1992) ...............................................................................................16

*Lee Mem'l Hosp. v. Burwell*,
  109 F. Supp. 3d 40 (D.D.C. 2015) ........................................................................................31

*LKQ Corp. v. U.S. Dep't of Homeland Sec.*,
  369 F. Supp. 3d 577 (D. Del. 2019) ......................................................................................34

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...............................................................................................................19

*Martensen v. Koch*,
  942 F. Supp. 2d 983 (N.D. Cal. 2013) ............................................................................ 11, 16

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ...............................................................................................................30

*Missouri v. W. Sur. Co.*,
  51 F.3d 170 (8th Cir. 1995) ...................................................................................................11

*Mitchael v. Colvin*,
  809 F.3d 1050 (8th Cir. 2016) ...............................................................................................34

*Modern Muzzleloading v. Magaw*,
  18 F. Supp. 2d 29 (D.D.C. 1998) ..........................................................................................12

*Mortensen v. First Fed. Sav. & Loan Ass'n,*
   549 F.2d 884 (3d Cir. 1977) ............................................................................11

*Munn v. City of Ocean Springs,*
   763 F.3d 437 (5th Cir. 2014) ..........................................................................27

*N.Y. State Rifle & Pistol Ass'n v. Cuomo,*
   804 F.3d 242 (2d Cir. 2015) ...........................................................................28

*Northgate Homes, Inc. v. City of Dayton,*
   126 F.3d 1095 (8th Cir. 1997).........................................................................35

*Ocean Cnty. Landfill Corp. v. EPA,*
   631 F.3d 652 (3d Cir. 2011) ...........................................................................34

*OnePoint Sols., LLC v. Borchert,*
   486 F.3d 342 (8th Cir. 2007) ..........................................................................15

*Org. for Competitive Mkts. v. U.S. Dep't of Agric.,*
   912 F.3d 455 (8th Cir. 2018) ..........................................................................12

*Osborn v. United States,*
   918 F.2d 724 (8th Cir. 1990) ..........................................................................11

*Perez-Zenteno v. U.S. Att'y Gen.,*
   913 F.3d 1301 (11th Cir. 2019).......................................................................12

*Pinnacle Armor, Inc. v. United States,*
   923 F. Supp. 2d 1226 (E.D. Cal. 2013) ..........................................................18

*Rare Breed Triggers, LLC v. Big Daddy Enters.,*
   No. 1:21-cv-149-RH-GRJ, 2021 WL 6197091 (N.D. Fla. 2021)......................5

*Rare Breed Triggers, LLC v. Garland,*
   No. 6:21-cv-01245 (M.D. Fla. 2021) ...........................................7, 15, 18, 23

*Roark & Hardee LP v. City of Austin,*
   522 F.3d 533 (5th Cir. 2008) ..........................................................................27

*Roberts v. United States,*
   No. 2:04-cr-295-PMD, 2007 WL 9754483 (D.S.C. 2007) ...............................28

*Rogers v. Civil Air Patrol,*
   129 F. Supp. 2d 1334 (M.D. Ala. 2001) ..........................................................13

*Sessions v. Dimaya,*
   138 S. Ct. 1204 (2018)....................................................................................27

*Sig Sauer, Inc. v. Brandon*,
  826 F.3d 598 (1st Cir. 2016) ..........................................................................29

*Sig Sauer, Inc. v. Jones*,
  133 F. Supp. 3d 364 (D.N.H. 2015) ...............................................................29

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007) ........................................................................................13

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ........................................................................................22

*Smirnov v. Clinton*,
  806 F. Supp. 2d 1 (D.D.C. 2011), *aff'd*, 487 F. App'x 582 (D.C. Cir. 2012) ....................................18

*Smith v. Dalton*,
  927 F. Supp. 1 (D.D.C. 1996) .........................................................................13

*Staples v. United States*,
  511 U.S. 600 (1994) ........................................................................................21

*Terra Int'l, Inc. v. Miss. Chem. Corp.*,
  119 F.3d 688 (8th Cir. 1997) .................................................................... 17, 18

*Trimble v. Asarco, Inc.*,
  232 F.3d 946 (8th Cir. 2000) ..........................................................................11

*United States v. 16,179 Molso Italian .22 Caliber Winler Derringer Convertible Starter Guns*,
  443 F.2d 463 (2d Cir. 1971) ...........................................................................28

*United States v. Alkazahg*,
  No. 202000087, 2021 WL 4058360 (N-M. Ct. Crim. App. 2021)...................23

*United States v. Calandra*,
  414 U.S. 338 (1974) ........................................................................................32

*United States v. Campbell*,
  427 F.2d 892 (5th Cir. 1970) ..........................................................................28

*United States v. Catanzaro*,
  368 F. Supp. 450 (D. Conn. 1973) ..................................................................28

*United States v. Clark*,
  582 F.3d 607 (5th Cir. 2009) ..........................................................................27

*United States v. Clinical Leasing Serv., Inc.*,
  925 F.2d 120 (5th Cir. 1991) ..........................................................................28

*United States v. Kelly,*
    276 F. App'x 261 (4th Cir. 2007) ...........................................................................28

*United States v. Mendez,*
    860 F.3d 1147 (8th Cir. 2017) ................................................................................33

*United States v. One 1974 Learjet 24D,*
    191 F.3d 668 (6th Cir. 1999) ..................................................................................33

*United States v. Quiroz,*
    449 F.2d 583 (9th Cir. 1971) ..................................................................................28

*United States v. Von Neumann,*
    474 U.S. 242 (1986) ................................................................................................33

*United States v. Wick,*
    No. CR 15-30-M-DLC, 2016 WL 10612608 (D. Mont. 2016) ............................28

*United States v. Williams,*
    553 U.S. 285 (2008) .........................................................................................26, 27

*United States v. Wojcikiewicz,*
    403 F. App'x 483 (11th Cir. 2010) .........................................................................28

*Uviado, LLC ex rel. Khan v. U.S. ex rel. I.R.S.,*
    755 F. Supp. 2d 767 (S.D. Tex. 2010) .......................................................10, 11, 19

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
    455 U.S. 489 (1982) .........................................................................................26, 28-29

*Wagstaff & Cartmell, LLP v. Lewis,*
    No. 21-2266, 2022 WL 2760324 (8th Cir. 2022) .................................................35

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) ................................................................................................27

*York v. Secretary of Treasury,*
    774 F.2d 417 (10th Cir. 1985) ................................................................................30

*Young Am. Corp. v. Affiliated Comp. Servs. (ACS), Inc.,*
    424 F.3d 840 (8th Cir. 2005) ..................................................................................11

## Statutes

5 U.S.C. § 701(a) ..................................................................................................................34

5 U.S.C. § 703 ......................................................................................................................13

5 U.S.C. § 704 ...............................................................................................................31, 34

5 U.S.C. § 706(2) ................................................................................................11

18 U.S.C. § 922 .........................................................................................2, 4, 32

19 U.S.C § 1607 .............................................................................................32, 35

19 U.S.C § 1608 .............................................................................................33, 35

19 U.S.C. § 1610 .............................................................................................*passim*

19 U.S.C. § 1618 ................................................................................................33

26 U.S.C. § 5845 .............................................................................................*passim*

26 U.S.C. § 6103 .................................................................................................3

28 U.S.C. § 1361 ................................................................................................34

28 U.S.C. § 1391 .........................................................................................12- 13, 14

28 U.S.C. § 1404(a) .............................................................................................17

28 U.S.C. § 1406 .............................................................................................11, 16

28 U.S.C. § 2201 ................................................................................................35

**Rules**

Fed. R. Civ. P. 12(b) ...............................................................................3, 10, 11, 16

Fed. R. Civ. P. 41(b) ...........................................................................................17

Fed. R. Civ. P. Supp. R. G. ..................................................................................33

Fed. R. Crim. P. 41(g) ...................................................................................2, 33, 34, 35

**Administrative and Executive Materials**

19 C.F.R. § 162.47 ...............................................................................................33

19 C.F.R. § 171.1 .................................................................................................33

19 C.F.R. § 171.2 .................................................................................................33

27 C.F.R. § 447.11 .................................................................................................3

27 C.F.R. § 478.11 .................................................................................................3

27 C.F.R. § 479.11 .................................................................................................3

Bump-Stock-Type Devices,
   83 Fed. Reg. 66 (Dec. 26, 2018) ...........................................................................3, 14, 19, 21

U.S. Patent No. 10,514,223 (filed Dec. 24, 2019) ................................................................ 5, 29

U.S. Patent No. 9,568,264 (filed Feb. 14, 2017) .........................................................................4

**State Regulations**

M.D. Fla. R. 1.07.........................................................................................................................19

M.D. Fla. R. 3.02(d)(2). ................................................................................................................9

**Legislative Materials**

National Firearms Act: Hearings Before the Committee on Ways and Means,
   H.R. 9066, 73rd Cong., 2nd Sess., (1934)..................................................................................21

**Other Authorities**

14D Arthur R. Miller, et al, Federal Practice and Procedure § 3815 (4th ed. 2013) .............................13

14D Wright & Miller, et al, Federal Practice and Procedure § 3827(4th ed. 2013)................................17

ATF Ruling 2006-2 (Dec. 13, 2006),
   https://www.atf.gov/firearms/docs/ruling/2006-2-classification-devices-exclusively-designed-
   increase-rate-fire/download [https://perma.cc/4QUG-QL6P]....................................................... 2, 20

Idioms, The Free Dictionary (2015),
   https://idioms.thefreedictionary.com/pull+the+trigger [https://perma.cc/7FXG-HR8S] .........20

National Firearms Act (NFA) Handbook, § 7.2.4 (revised 2009),
   https://www.atf.gov/firearms/docs/undefined/atf-national-firearms-act-handbook-chapter-
   7/download [https://perma.cc/DE74-3YZF] ........................................................................3, 28, 29

Random House Thesaurus College Edition, 297 (1984)..........................................................................21

Regus, 3523 45th Street South,
   https://www.regus.com/en-us/united-states/north-dakota/fargo/3523-45th-street-south-3099
   [https://perma.cc/P59M-9KN4] ................................................................................................. 16

Regus, Virtual Offices,
   https://www.regus.com/en-us/virtual-offices, [https://perma.cc/8LQJ-4GZ9] ........................16

Webster's New World Dictionary 1177 (3d ed. 1988) ................................................................20

Webster's Ninth New Collegiate Dictionary 77 (1985).............................................................27

Webster's Ninth New Collegiate Dictionary 498 (1986)...........................................................21

## INTRODUCTION

In July 2021, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") served Plaintiff Rare Breed Triggers, LLC with a letter demanding that it cease and desist manufacturing and distributing its FRT-15 trigger assembly. ATF's letter explained that the FRT-15 constituted a "machinegun" under federal law, the possession of which is unlawful in most circumstances. Plaintiff first filed a lawsuit challenging that classification in the Middle District of Florida. After that court denied Plaintiff's requested relief and dismissed the case, Plaintiff moved its state of organization from Florida to North Dakota, and then filed the instant Complaint challenging ATF's classification. Plaintiff's Complaint should be dismissed or transferred to another venue.

As a threshold matter, venue in the District of North Dakota is not proper. No Defendant resides in this district, and none of the events alleged in the Complaint occurred in this district. Despite Plaintiff being newly organized in North Dakota, the available evidence indicates that Plaintiff's principal place of business remains in Florida. The Court should therefore dismiss the Complaint for lack of venue, or, in the alternative, transfer the case to a district in which venue is proper. Plaintiff also lacks standing to challenge ATF's bump-stock regulation because, as Plaintiff acknowledges, the bump-stock regulation does not apply to the FRT-15. Plaintiff's alleged injury is thus not traceable to the bump-stock regulation.

Although this Court need not reach the issue, Plaintiff's challenge to ATF's classification fails on the merits as a matter of law. Plaintiff's entire argument is premised on an interpretation of the statutory phrase "single function of the trigger" that courts have repeatedly rejected. The FRT-15 fires multiple rounds automatically when the shooter maintains a single, constant rearward pull of the finger on the trigger, thus making it a "machinegun." The phrase "single function of the trigger" is not unconstitutionally vague, as Plaintiff alleges. The phrase clearly means that a shooter can fire multiple rounds without the need to pull and release and pull again. Even if there is some ambiguity in the

phrase, it is by no means standardless such that the void-for-vagueness doctrine applies. Plaintiff's procedural due process claim likewise fails because Plaintiff chose to forgo ATF's classification process prior to distributing the FRT-15. And Plaintiff's claim that ATF should have instituted forfeiture proceedings under 19 U.S.C. § 1610 fails for many reasons, including that § 1610 does not apply to ATF seizures and that Federal Rule of Criminal Procedure 41(g) provides the proper mechanism for challenging an ATF seizure, albeit in a different district. Finally, even if the Court were inclined to find that Plaintiff could succeed on the merits of its claims, it should decline to provide Plaintiff its requested declaratory relief because Plaintiff slept on its rights by not seeking classification prior to distributing the FRT-15.

## BACKGROUND

### I.   Statutory and Regulatory Background

Machineguns have long been regulated under the National Firearms Act of 1934 ("NFA"). Since passage of the Firearm Owners Protection Act of 1986 ("FOPA"), the sale of new machineguns to members of the public has been prohibited. *See* 18 U.S.C. § 922(o). Congress defined a machinegun as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b); *see also* 18 U.S.C. § 922(a)(4), (b)(4) (incorporating this definition into the criminal statute).

In 2006, ATF issued Ruling 2006-2, which interpreted the phrase "single function of the trigger" in § 5845(b) to mean "single *pull* of the trigger." ATF Ruling 2006-2, at 2 (Dec. 13, 2006), https://www.atf.gov/firearms/docs/ruling/2006-2-classification-devices-exclusively-designed-

increase-rate-fire/download    [https://perma.cc/4QUG-QL6P]    (emphasis    added).    Under Ruling 2006-2, any device that "fire[s] repeatedly" when "the shooter maintains finger pressure against the stock" (*e.g.*, because an internal coiled spring pushes the shooter's finger forward) is deemed a machinegun. *Id.*

In 2018, ATF issued a regulation clarifying that "bump stocks" are machineguns under § 5845(b). Bump-Stock-Type Devices, 83 Fed. Reg. 66,514 (Dec. 26, 2018) (amending 27 C.F.R. §§ 447.11,    478.11,    479.11).    A    bump    stock    is    a    device    that "convert[s] an otherwise semiautomatic firearm into a machinegun" by "harness[ing] the recoil energy of the semiautomatic firearm in a manner that allows the trigger to reset and continue firing without additional physical manipulation of the trigger by the shooter." *Id.* at 66,515. The bump-stock regulation invokes the same interpretation of statutory phrase "single function of the trigger" as Ruling 2006-2. *Id.*

## II.    Factual and Procedural Background

### A.    Events Prior to the First Litigation

On or about August 4, 2017, Company A,[1] through Rick Vasquez Firearms LLC, submitted its AR1 trigger system to ATF for evaluation "as a trigger-finger reset device." Pl.'s Ex. 5, ECF No. 1-4, at 54;[2] *see* National Firearms Act (NFA) Handbook, § 7.2.4 (revised 2009), https://www.atf.gov/firearms/docs/undefined/atf-national-firearms-act-handbook-chapter-7/download [https://perma.cc/DE74-3YZF] ("[A] firearms manufacturer is well advised to seek an

---

[1] The identity of the company that submitted the 2017 evaluation has been redacted as taxpayer return information subject to the disclosure limitations in the Internal Revenue Code, 26 U.S.C. § 6103. The NFA is located in the Internal Revenue Code, Chapter 53, and machineguns are defined as "firearms" within the NFA, 26 U.S.C. § 5845(a)(6). This brief uses the pseudonym "Company A" in place of the company's real name.

[2] Plaintiff's exhibits were attached to the Complaint and are therefore proper for the Court to consider even in ruling on a motion to dismiss under Rule 12(b)(6). *See Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001). These materials overlap considerably with the materials that ATF provided as the administrative record in the Middle District of Florida case. *See generally infra* Background Part II(B).

ATF classification before going to the trouble and expense of producing [a device].”). The AR1 was covered by United States Patent Number 9,568,264 (the “’264 patent”).[3] Pl.'s Ex. 5, at 42. Company A explained that the device works by “mechanically pushing the trigger rapidly forward, resetting the finger and trigger to the forward position. This allows the user to make a decision in which they leave rearward pressure off the trigger to stop the firing sequence, or re-engage rearward pressure on the trigger to continue the firing sequence.” *Id.* at 54. In Mr. Vasquez's opinion, “this device . . . is only a trigger reset device, [but] nevertheless it has been submitted for [ATF's] classification” as to whether or not the device would constitute a machinegun. *Id.* Mr. Vasquez stated that the AR1 trigger “is specifically designed to only fire a single round on each rearward movement of the trigger” and noted that “ATF has previously interpreted the phrase ‘single function of the trigger’ to mean a single <u>movement</u> of the trigger.” *Id.* (emphasis in original).

By letter dated August 28, 2018, ATF's Firearms Technology Industry Services Branch (“FTISB”) classified the AR1 trigger as a machinegun under 26 U.S.C. § 5845(b). *See id.* at 41–53. FTISB noted that the “shooter maintains a constant rearward pull on the trigger and the internal mechanism automatically forces the individual's finger/trigger forward instead of requiring that the shooter release the trigger” and this “single constant rearward pull will cause the firearm to fire until the trigger is released, the firearm malfunctions, or the firearm exhausts its ammunition supply.” *Id.* at 45–46. In order “to demonstrate the sample fired more than one shot, without manual reloading, with a single function of the trigger, rather than firing a single shot with each function of the trigger,” a zip-tie “was installed around the rear of the grip and the front of the sample's trigger,” the zip-tie was gradually tightened “until the trigger was retracted just enough to release the hammer” and “retained in a fixed position,” and the “weapon cycled and fired five cartridges automatically <u>without the trigger</u>

---

[3] Although federal law generally prohibits the commercial sale of new machineguns, a firearm developer may nonetheless obtain a patent for such technologies for sale to military or law enforcement agencies. *See, e.g.*, 18 U.S.C. § 922(o)(2)(A).

4

being released." *Id.* at 51 (emphasis in original). This test was repeated several times with the same result. In summary, FTISB found the AR1 trigger is a device "designed to assist in preventing the hammer from positively resetting (requiring that the shooter release the trigger in order to fire the next round) and causes a firearm to shoot automatically more than one shot, without manual reloading, by a single function of the trigger." *Id.* at 53. Company A did not take further action on FTISB's classification.

On December 24, 2019, United States Patent Number 10,514,223 B1 (the "'223 patent") was issued to Company A for a "Firearm Trigger Mechanism" (the device that would later be marketed by Rare Breed Triggers, LLC as the FRT-15). *Id.* at 31; Compl. ¶ 139, ECF No. 1. The patent application indicates that the FRT-15 functions largely the same as the AR1 claimed in the '264 patent by the same company, but that the FRT-15 provides a "'drop-in' solution for existing firearm platforms." Pl.'s Ex. 5, at 37.[4] In the Abstract of the patent, the FRT-15 is described as follows:

> The trigger member has a surface positioned to be contacted by hammer when the hammer is displaced by cycling of the bolt carrier, the contact causing the trigger member to be forced to the set position. The locking bar is pivotally mounted in a frame and spring biased toward a first position in which it mechanically blocks the trigger member from moving to the release position and is movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position, allowing the trigger member to be moved by an external force to the release position.

*Id.* at 31. The description states that:

> the trigger member forces the trigger to pivot . . . toward and to its reset position. At the same time, as the trigger member is reset, the biasing spring moves the lower end of the locking bar into a second position . . . in which it blocks pivotal movement of the trigger, including by finger pressure applied (or reapplied) to the trigger blade.

*Id.* at 39. The language "including by finger pressure applied (or reapplied) to the trigger blade" suggests that while a shooter may pull the trigger, release it, and pull again, it is not necessary for the

---

[4] At some point, the rights in the '223 patent were transferred to Plaintiff Rare Breed Triggers, LLC, which has recently brought patent infringement actions against other firearm manufacturers who allegedly manufacture and distribute similar devices. *See Rare Breed Triggers, LLC v. Big Daddy Enters., Inc.*, No. 1:21-cv-149-RH-GRJ, 2021 WL 6197091 (N.D. Fla. Dec. 30, 2021); Compl. ¶ 9.

firearm to shoot more than one shot as long as pressure remains "applied." Neither Company A nor any other entity sought ATF classification for the FRT-15.

On or about April 1, 2021, a website selling Rare Breed Triggers, model FRT-15, came to the attention of ATF's Internet Investigations Center. Pl.'s Ex. 13, ECF No. 1-11, at 48. Concerned that this was a machinegun, ATF purchased the model FRT-15 for examination by ATF's Firearms Technology Criminal Branch. *Id.* at 58. The examination revealed that the FRT-15 was a combination of parts, designed and intended for use in converting a weapon into a machinegun, and as such was a machinegun as defined in 26 U.S.C. § 5845(b). Pl.'s Ex. 5, at 5.

The examination report noted that the device was marked with "Rare Breed Triggers U.S. Pat. 10514223," *id.* at 2, *i.e.*, this device was a "drop-in" version of the AR1 device previously submitted by Company A for classification. The report noted that FTISB had previously classified Company A's AR1 device as a machinegun. *Id.* In discussing the device's operation, the report noted that the trigger is forced forward and held in its forward position by the locking bar, and as the "bolt carrier continues to move forward, it strikes the rear surface of the locking bar releasing the trigger." *Id.* at 4. Importantly,

> [i]f the shooter maintains constant rearward pressure to the trigger, that single constant pull will continue the cycle of operation and fire a subsequent projectile . . . . This differs from a cycle of o[pe]rations in a typical AR-type semiautomatic firearm in which the shooter must release and pull the trigger to a second projectile. As stated, a firearm assembled with the FRT-15 requires no such release and subsequent pull by the shooter to fire a second projectile. Instead, the shooter may fire a second projectile merely by maintaining the initial trigger pull and allowing the self-acting internal mechanism to complete its automatic cycle of operation.

*Id.* To further explain that a separate pull-release-pull of the trigger is not necessary for a semi-automatic weapon with such a device installed to keep firing, the report included an attachment of the AR1 classification showing the repeated fire when the trigger was zip-tied. *Id.* at 51.

Based on the Report, ATF's Tampa Field Division issued a letter dated July 26, 2021, to Mr. Kevin Maxwell, owner of Rare Breed Triggers, LLC, demanding that he "[c]ease and desist all

manufacture and transfer of the Rare Breed Trigger FRT-15." Pl.'s Ex. 1, ECF No. 1-1, at 2. The letter was hand delivered to Mr. Maxwell at a meeting with the Tampa Field Division's Special Agent in Charge. Compl. ¶ 12.[5] On August 2, 2021, Mr. Maxwell submitted to ATF a letter objecting to the agency's determination, along with four opinion letters from ATF retirees that he consulted. Compl. ¶¶ 30–31; *see* Pl.'s Ex. 4, ECF No. 1-3. The letter stated that Rare Breed Triggers, LLC would not comply with ATF's cease-and-desist letter. Pl.'s Ex. 4, at 3.

### B.     Proceedings in the First Litigation

On August 2, 2021, the same day as Mr. Maxwell's letter to ATF objecting to the classification determination, Mr. Maxwell, proceeding *pro se*, filed a complaint in the Middle District of Florida on behalf of himself and Rare Breed Triggers, LLC as Plaintiffs. Compl., *Rare Breed Triggers, LLC v. Garland*, No. 6:21-cv-01245 (M.D. Fla. Aug. 2, 2021), ECF No. 1. Mr. Maxwell simultaneously filed a motion for preliminary injunction and motion for a temporary restraining order. *See id.*, ECF Nos. 2–3. The complaint challenged ATF's July 26, 2021 cease-and-desist letter and the underlying classification of the FRT-15 as a machinegun under the Administrative Procedure Act ("APA"). Compl. ¶¶ 78–85 (as re-filed Aug. 3, 2021), *id.*, ECF No. 7.

On August 5, 2021, before Defendants had an opportunity to respond to Plaintiffs' filings, the Court denied the motion for a temporary restraining order, finding that Plaintiffs had not demonstrated irreparable harm. *Id.*, ECF No. 12, at 7. Defendants filed a motion in limine prior to a scheduled hearing on the preliminary injunction motion at which Plaintiffs had proposed to call witnesses to testify. *Id.*, ECF No. 18. The motion in limine explained that, in an APA case, judicial

---

[5] During the meeting Mr. Maxwell represented that he was "disappointed" with the machinegun determination but "not surprised," adding that he had done his "homework" before acquiring the patent and had consulted with multiple ATF retirees. Administrative Record at 296, *Rare Breed Triggers, LLC v. Garland*, No. 6:21-cv-01245 (M.D. Fla. Aug. 16, 2021), ECF No. 29, at 72. Mr. Maxwell then asked if a zip-tie was used during the testing process and stated that if any ATF employee utilized a zip-tie in the State of Florida, "they would immediately be arrested for making an illegal machinegun." *Id.*

review of the merits is limited to the administrative record, and so witnesses were not appropriate. *Id.* at 2–4. Defendants filed the Administrative Record and Certification of Administrative Record shortly thereafter in order to facilitate the court's review of the preliminary injunction motion. *Id.*, ECF Nos. 26–31. The court did not rule on Defendants' motion in limine, instead rescheduling the hearing to a later date and allowing Plaintiffs to file an amended complaint. *Id.*, ECF Nos. 23–25.

Plaintiffs filed an amended complaint on August 27, 2021. *Id.*, ECF No. 32. In addition to the APA claims raised in the first complaint, the amended complaint also claimed that ATF violated Plaintiffs' procedural due process rights, *id.* ¶¶ 129–30, and sought a writ of mandamus against Defendants, *id.* ¶¶ 172–86.[6] The court then scheduled an in-person hearing on the still-pending motion for preliminary injunction. *Id.*, ECF Nos. 43, 51. Plaintiffs again indicated their intention to call witnesses, so Defendants filed a second motion in limine. *Id.*, ECF No. 45. Plaintiffs, in turn, filed their own motion in limine. *Id.*, ECF No. 50. Following a telephonic hearing, the court granted Defendants' motion in limine and denied Plaintiffs' motion in limine. *Id.*, ECF No. 60; Transcript of Proceedings (Oct. 4, 2021), *id.*, Defs.' Ex. 1. However, the court ruled that Plaintiffs could call witnesses to testify to the non-merits preliminary-injunction factors (*e.g.*, irreparable harm). Transcript of Proceedings at 14:1–4 (Oct. 4, 2021), *id.*, Defs.' Ex. 1, at 14.

The Court held a hearing on the preliminary-injunction motion at the federal courthouse in Orlando, Florida on October 6, 2021. Transcript of Proceedings (Oct. 6, 2021), *id.*, Defs.' Ex. 2. Mr. Maxwell, representing the Plaintiffs, called several witnesses (Daniel O'Kelly, Brian Luettke, and Glenn Bellamy) to, in Mr. Maxwell's words, "testisfy[] specifically to the likelihood of success on the merits." *Id.* at 5:23–24. The court told Mr. Maxwell, "[t]his is exactly what I told you you couldn't do," but nevertheless allowed the testimony to continue, over Defendants' standing objection, in order to

---

[6] The amended complaint also brought a claim for monetary damages under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against two newly added ATF employees as defendants named in their individual capacities. *Id.* ¶¶ 146–71.

"let [Plaintiffs] build an appellate record." *Id.* at 7:14–16; *see also id.* at 7:20–21 ("[T]his isn't even a clever way to circumvent my order."). Later in the hearing, Mr. Maxwell suggested that Plaintiffs might file a motion to remand the matter back to the agency so that Plaintiffs could submit additional materials for ATF to review and include in a subsequent administrative record. *Id.* at 46:2–6, 54:14–25. Plaintiffs ultimately did not file a motion to remand.

On October 12, 2021, the court denied Plaintiffs' motion for a preliminary injunction, again finding that Plaintiffs had not demonstrated irreparable harm. *Id.*, ECF No. 68, at 8. On October 28, 2021, the court entered an order *sua sponte* dismissing the case "without prejudice" because the parties did not file a case management report. *Id.*, ECF No. 75, at 2. The court advised that "Plaintiff may seek reconsideration" if the fault for not filing a case management report "lies entirely with Defendant." *Id.* at 2 n.1. Plaintiffs did not seek reconsideration of the dismissal.[7]

**C.      Events After the First Litigation**

On November 2, 2021, Mr. Maxwell sent a letter to ATF asking the agency to "reconsider[]" the classification of the FRT-15 and attached several exhibits, including the opinion letters from ATF retirees. *See* Compl. ¶ 188; Pl.'s Ex. 18, ECF No. 1-16, at 1. On November 15, 2021, ATF responded via letter informing Mr. Maxwell that the FRT-15 had been classified as a machinegun, that the cease-and-desist letter was still in effect, and that the November 2 correspondence and materials had been forwarded to ATF's Firearms and Ammunition Technology Division ("FATD"). *See* Compl. ¶ 189; Pl.'s Ex. 19, ECF No. 1-17, at 1–2.

On January 12, 2022, ATF served a cease-and-desist letter on 3rd Gen Machine, Inc., a manufacturer and supplier of FRT-15 triggers based in Logan, Utah. Compl. ¶ 44(a). The next day, ATF served another cease-and-desist letter on Prepper's Discount, a dealer of FRT-15 triggers. *Id.*

---

[7] Under the Middle District of Florida local rules, a case management report is not required in "an action for review of an administrative record." M.D. Fla. R. 3.02(d)(2).

¶ 192.[8] The Complaint alleges that, on March 26, 2022, ATF agents conducted a "raid" on a 3rd Gen Machine, Inc. facility and seized FRT-15 triggers and related materials. *Id.* ¶ 44(c). The Complaint further alleges that, on April 14, 2022, Mr. Lawrence DeMonico of Rare Breed Triggers, LLC went to the 3rd Gen Machine, Inc. facility to pick up boxes of FRT-15 triggers that were not taken in the March 26 raid. *Id.* ¶ 44(e). These FRT-15 triggers allegedly belonged to Rare Breed Triggers, LLC. *Id.* The next day, as Mr. DeMonico was transporting these boxes to another location, ATF agents allegedly stopped his vehicle and seized the FRT-15 triggers. *Id.* ¶ 44(f).

Rare Breed Triggers, LLC filed Articles of Organization with the North Dakota Secretary of State on November 9, 2021, and listed an Orlando, Florida address as its principal executive office. *See* Defs.' Ex. 3; *see also infra* Part I(A). On March 29, 2022, Rare Breed Triggers, LLC filed a form to change the address of its principal executive office to Fargo, North Dakota. *See* Defs.' Ex. 5. Less than two months later, on May 16, 2022, Rare Breed Triggers, LLC, through its counsel Mr. Maxwell, filed the instant Complaint in the District of North Dakota.

## LEGAL STANDARD

Defendants bring this motion under Federal Rule of Civil Procedure 12(b)(3), because the District of North Dakota is not a proper venue; Rule 12(b)(1) for lack of standing; and Rule 12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted.

The plaintiff has the burden of proving that venue is proper in response to a motion to dismiss under Rule 12(b)(3). *See Uviado, LLC ex rel. Khan v. U.S. ex rel. I.R.S.*, 755 F. Supp. 2d 767, 779 & n.7

---

[8] Plaintiff alleges that these cease-and-desist letters somehow disprove representations made by Defendant's counsel at a previous hearing in the Middle District of Florida that Rare Breed Triggers, LLC was not under criminal investigation. Compl. ¶ 193. Plaintiff is incorrect. Counsel for Defendants stated that "Plaintiff received a subpoena just for records in an unrelated matter in the Western District of Texas" and that "Mr. Maxwell and Rare Breed Triggers are not the subject of *that* investigation, and the investigation does not involve the FRT-15 or machine gun classification." Pl.'s Ex. 22, ECF No. 1-20, at 3:12–16 (emphasis added). Counsel never stated that Mr. Maxwell and Rare Breed Triggers, LLC, are not or would not in the future be subject to *any* criminal investigation involving the FRT-15, only that the subpoena that Mr. Maxwell received was for an unrelated matter.

(S.D. Tex. 2010); *Martensen v. Koch*, 942 F. Supp. 2d 983, 996 (N.D. Cal. 2013); *E.W. Wylie Corp. v. Transp. Tech. Servs., Inc.*, No. 3:11-cv-47, 2011 WL 13111712, at *2 (D.N.D. Oct. 24, 2011);  *see also Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (applying the "preponderance of the evidence" standard). A court may consider materials outside the pleadings to determine whether venue is proper. *Uviado*, 755 F. Supp. 2d at 780; *Martensen*, 942 F. Supp. 2d at 996. "If the court finds venue is improper, it has discretion to dismiss or to transfer venue to a proper court." *Martensen*, 942 F. Supp. 2d at 996; *see* 28 U.S.C. § 1406(a).

In response to a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *Trimble v. Asarco, Inc.*, 232 F.3d 946, 955 n.9 (8th Cir. 2000) (citing *Missouri v. W. Sur. Co.*, 51 F.3d 170, 173 (8th Cir. 1995)). In order for the Court to have subject-matter jurisdiction over a challenge to agency action, the plaintiff must have standing to sue. *See, e.g.*, *Young Am. Corp. v. Affiliated Comp. Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005). A court may likewise examine materials outside the pleadings as it deems appropriate in order to resolve the question of its jurisdiction. *See Osborn*, 918 F.2d at 730.

Under Rule 12(b)(6), courts must dismiss complaints that do not allege sufficient facts to demonstrate a plausible entitlement to relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility showing "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and it "asks for more than a sheer possibility that the defendant has acted unlawfully." *Id.*

In reviewing ATF's actions under the APA, the Court may only "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or

11

otherwise not in accordance with law." *Falk v. U.S. ex rel. Dep't of Interior*, 452 F.3d 951, 953 (8th Cir. 2006) (quoting 5 U.S.C. § 706(2)); *see FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021) ("A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision."). "Arbitrary and capricious review is a highly deferential standard of review. We defer to agency action so long as 'an agency examine[d] the relevant data and articulate[d] a satisfactory explanation for its action.'" *Adventist Health Sys./SunBelt, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 17 F.4th 793, 803 (8th Cir. 2021) (alterations in original) (quoting *Org. for Competitive Mkts. v. U.S. Dep't of Agric.*, 912 F.3d 455, 459 (8th Cir. 2018)); *see also Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019) ("That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision."); *Akins v. United States*, No. 8:08-cv-988, 2008 WL 11455059, at *4 (M.D. Fla., Sept. 23, 2008) ("Ultimately, the reviewing court should only ensure that the agency came to a rational conclusion, not [ ] conduct its own investigation and substitute its own judgment for the administrative agency's decision." (alteration in original) (internal quotation marks omitted)), *aff'd*, 312 F. App'x 197 (11th Cir. 2009); *Freedom Ordnance Mfg., Inc. v. Brandon*, No. 3:16-cv-243, 2018 WL 7142127, at *7 (S.D. Ind. Mar. 27, 2018) ("[T]he court is tasked with reviewing what [ATF] actually did as opposed to what it could have done."); *Modern Muzzleloading, Inc. v. Magaw*, 18 F. Supp. 2d 29, 37 (D.D.C. 1998) ("[ATF] does not bear the burden of convincing the Court that its position is better . . . it merely need convince the Court that the decision was not arbitrary and capricious.").

## ARGUMENT

### I.   Plaintiffs' Complaint Should Be Dismissed for Lack of Venue or Transferred to a Proper Venue

#### A.   Venue Is Not Proper in This District

The District of North Dakota is not a proper venue for this case.[9] The Complaint cites 28

---

[9] Although Defendants also argue that the Court lacks subject matter jurisdiction over at least some of the claims raised by Plaintiff, *see infra* Part II, the Court does not need to reach that issue, or

U.S.C. § 1391(e) as the basis for venue.[10] Compl. ¶ 3. Under that statute,

> [a] civil action in which a defendant is an officer or employee of the United
> States or any agency thereof acting in his official capacity or under color of
> legal authority, or an agency of the United States, or the United States, may,
> except as otherwise provided by law, be brought in any judicial district in which
> (A) a defendant in the action resides, (B) a substantial part of the events or
> omissions giving rise to the claim occurred, or a substantial part of property
> that is the subject of the action is situated, or (C) the plaintiff resides if no real
> property is involved in the action.

28 U.S.C. § 1391(e)(1). There is no basis for venue in this district under this statute.

No defendant resides in this district, so § 1391(e)(1)(A) does not apply. The named defendants,

agencies of the United States—DOJ and ATF—and the officials in charge of those agencies, sued in

their official capacities, are all based in Washington, D.C. *See, e.g.*, 14D Arthur R. Miller, et al., Federal

Practice and Procedure § 3815 (4th ed. 2013) ("[T]he relevant inquiry is the official residence . . . .");

*Smith v. Dalton*, 927 F. Supp. 1, 6 (D.D.C. 1996); *Rogers v. Civil Air Patrol*, 129 F. Supp. 2d 1334, 1338

(M.D. Ala. 2001).

Section 1391(e)(1)(B) also does not apply because no events giving rise to the claims in the

Complaint occurred in this district, and there is no dispute over property situated in this district. The

events that gave rise to this case occurred primarily in the Middle District of Florida; the cease-and-

desist letter was issued from ATF's office in Tampa, Florida, and received by Mr. Maxwell in that

district. Compl. ¶ 12.[11] To the extent that Plaintiff's due process claim arises out of the proceedings in

the first action, those events also took place in the Middle District of Florida (as discussed below, Rare

---

any other issue, if it dismisses for lack of venue or transfers the case to a different venue, *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (internal quotation marks and citations omitted)).

[10] The Complaint also cites 5 U.S.C. § 703. *See* Compl. ¶ 3. That provision of the APA provides only that actions such as this one shall be brought "in a court of competent jurisdiction." As such, the default rules under 28 U.S.C. § 1391(e) provide the applicable venue standard.

[11] The examination report underlying ATF's classification decision was completed in Martinsburg, West Virginia. *See* Pl.'s Ex. 5, at 1. Classifications are a function of ATF headquarters, although the physical location of the examination facility is in West Virginia. The investigation into the FRT-15 also involved ATF's Internet Investigations Center in Washington, D.C.

Breed Triggers, LLC was registered as a business in Florida until November 2021, *see* Compl. ¶ 33). The only other events described in the Complaint are the alleged cease-and-desist letter to and subsequent raid of 3rd Gen Machine, Inc.'s facility in Utah, Compl. ¶ 44(a), (c), and the alleged traffic stop of Mr. DeMonico, which appears to have taken place in New Mexico, *id.* ¶ 44(e)–(g); Pl.'s Ex. 7, ECF No. 1-6.[12] Nowhere does the Complaint allege that any event occurred in North Dakota or that any property is located in North Dakota. In fact, the only mention of North Dakota in the Complaint is that Rare Breed Triggers, LLC has its "current principal place of business" in Fargo, North Dakota, which, if true, would support venue under § 1391(e)(1)(C), not § 1391(e)(1)(B).

However, venue cannot be sustained under § 1391(e)(1)(C) because no Plaintiff resides in this district. For purposes of venue,

> an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business . . . .

28 U.S.C. § 1391(c)(2). The only Plaintiff—Rare Breed Triggers, LLC—is an unincorporated entity with the capacity to sue and be sued, so its residence as a plaintiff for these purposes depends on where it maintains its "principal place of business." The phrase "principal place of business" refers to the place where a company's officers "direct, control, and coordinate the [company's] activities," also referred to as the company's "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010); *see also Ariz. Yage Assembly v. Barr*, No. 3:20-cv-03098-WHO, 2020 WL 5629833, at *15 (N.D. Cal. Sept. 21, 2020) (applying the *Hertz* "nerve center" test "[f]or purposes of the federal venue statute" and finding that plaintiffs' pleading regarding corporations' state of incorporation was insufficient to establish venue). The "nerve center" test applies to limited liability companies. One court, "[a]pplying the *Hertz* nerve center test to the unique circumstance where the holding company is the sole member of a

---

[12] The Complaint also challenges the bump-stock regulation, 83 Fed. Reg. 66,514, which was promulgated by ATF in Washington, D.C.

manager-managed limited liability company," concluded that "the 'nerve center' of" the limited liability company was Philadelphia, not Delaware where the company was organized. *Brewer v. SmithKline Beacham Corp.*, 774 F. Supp. 2d 720, 729 (E.D. Pa. 2011). "This is because [the limited liability company] ha[d] factually and legally delegated the vast majority of its decision-making to LLC's officers and directors—the 'managers' of LLC—who operate from Philadelphia." *Id.*

Prior to November 2021, Rare Breed Triggers, LLC was organized in the State of Florida. *See* Compl. ¶ 3, *Rare Breed Triggers, LLC*, No. 6:21-cv-01245 (M.D. Fla. Aug. 2, 2021), ECF No. 1-4 ("I [Kevin C. Maxwell] am . . . the sole owner and counsel for RARE BREED TRIGGERS, LLC, a Florida Limited Liability Company ('RBT') which shares a mailing address with my law office of 733 W. Colonial Drive, Orlando, Florida 32804."). On November 9, 2021, Rare Breed Triggers, LLC filed Articles of Organization with the North Dakota Secretary of State, *see* Defs.' Ex 3, and on December 7, 2021, it filed Articles of Merger disbanding the Florida company, *see* Defs.' Ex. 4. According to the Articles of Merger, Mr. Maxwell was the sole "manager" (or member) of the Florida company and remains the sole "manager" (or member) of the North Dakota company. *Id.* That document also refers to Mr. Maxwell as "a resident of Florida." *Id.* at 3 (under "recitals"). Mr. Maxwell, who represents Plaintiff as counsel in this matter, lists a work address in Lake Mary, Florida. *See* Compl. ¶ 280. Thus, the available evidence indicates that the sole owner and manager of Rare Breed Triggers, LLC, remains a resident of Florida.[13]

On March 29, 2022—less than two months before the Complaint in this case was filed—Rare Breed Triggers, LLC filed with the North Dakota Secretary of State a form to change the address of its "Principal Executive Office" to 3523 45th Street South, Suite 100, Fargo, North Dakota 58104. *See* Defs.' Ex. 5. And the Complaint states that Rare Breed Triggers, LLC's "current principal place of

---

[13] For most non-venue purposes, this would end the inquiry of where Rare Breed Triggers, LLC "resides." "[A]n LLC is not necessarily a citizen of its state of organization but is a citizen of each state in which its members are citizens." *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 347 n.4 (8th Cir. 2007).

business" is at this address in Fargo. Compl. ¶ 4. However, the Complaint says nothing about what sorts of activities take place at this address. In fact, the address at 3523 45th Street South likely refers to a *virtual* office. The company that owns that address, Regus, rents out office spaces as well as virtual offices, *i.e.*, offices with a mailing address but no physical space. *See* Regus, 3523 45th Street South, https://www.regus.com/en-us/united-states/north-dakota/fargo/3523-45th-street-south-3099 [https://perma.cc/P59M-9KN4]; Regus, Virtual Offices, https://www.regus.com/en-us/virtual-offices [https://perma.cc/8LQJ-4GZ9]. And a floorplan of the 3523 45th Street South building shows that "Suite 100" does not refer to any physical office, *see* Defs.' Ex. 6 (showing Suites 101 to 197), suggesting that Rare Breed Triggers, LLC has a virtual office. In all likelihood, then, Rare Breed Triggers, LLC is operated primarily out of Florida, where Mr. Maxwell's law office is located, and the Fargo address is used only as a mailing address. At the very least, the Complaint's conclusory statement that Rare Breed Triggers, LLC's "principal place of business" is in Fargo, Compl. ¶ 4, cannot satisfy the *Hertz* test concerning where the company's officer(s) "direct, control, and coordinate the [company's] activities." *Hertz*, 559 U.S. at 92–93. Plaintiff bears the burden of proof to demonstrate that venue is proper, *Martensen*, 942 F. Supp. 2d at 996, and the evidence here indicates that Rare Breed Triggers, LLC's principal place of business is not, as a factual matter, in the District of North Dakota. Venue is therefore not proper in this district.

Accordingly, the Court has two options: either it "[1] shall dismiss, or [2] if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see also* Fed. R. Civ. P. 12(b)(3). The district court has discretion as between those options. *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992); *see also Fischer v. First Nat'l Bank of Omaha*, 466 F.2d 511, 511 (8th Cir. 1972) (dismissing an interlocutory appeal to a transfer order under § 1406). "[D]istrict courts often dismiss rather than transfer under Section 1406(a) if the plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper and that

similar conduct should be discouraged." 14D Wright & Miller, *supra*, § 3827. Dismissal in this case would cause minimal prejudice because Plaintiff could likely refile in another district where there is no venue problem. *See* Fed. R. Civ. P. 41(b).

In the alternative, the case should be transferred to a district in which venue is proper. At least two districts meet this criteria: the Middle District of Florida, where most of the events giving rise to the claims occurred and where Rare Breed Triggers, LLC's principal place of business is most likely located, and the District for the District of Columbia, where the Defendants reside. And, since Plaintiff already filed a similar lawsuit in the Middle District of Florida and the court in that case is familiar with the issues raised by this lawsuit, the Middle District of Florida is the most sensible transferee venue.

### B.      Transfer Is Appropriate Even if Venue Is Proper in This District

Even if the Court concludes that venue in this district is proper, the Court should nonetheless transfer the case to the Middle District of Florida under 28 U.S.C. § 1404(a). Under that statute, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A transfer motion under § 1404(a) "requires the court to consider the convenience of the parties, the convenience of the witnesses, the interests of justice, and any other relevant factors when comparing alternative venues." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997). Courts are not limited to consideration of these "enumerated factors" and must make a "case-by-case evaluation of the particular circumstances." *Id.* at 691.

Here, the totality of the circumstances favors transfer to the Middle District of Florida. That district would be more convenient for the parties. The investigation and cease-and-desist letter to Rare Breed Triggers, LLC were handled by the ATF field office in Tampa, and the ATF agents who are

familiar with this case are thus based in Tampa.[14] And whether or not Rare Breed Triggers, LLC actually conducts its business in Florida, it is indisputable that its counsel, including Mr. Maxwell, are based in Florida. So any in-person hearing would be more convenient for the parties in the Middle District of Florida. Similarly, to the extent witnesses will be needed at any point in these proceedings,[15] the Middle District of Florida is a more convenient forum. Of the four supposed "experts" whose opinions Plaintiff cites, one has a Florida address, and none has a North Dakota address. *Compare* Pl.'s Ex. 9, at 1, ECF No. 1-7 (Florida), *with* Pl.'s Ex. 10, at 1, ECF No. 1-8, (Texas); Pl.'s Ex. 11, at 4, ECF No. 1-9 (Virginia); Pl.'s Ex. 12, at 1, ECF No. 1-10 (Michigan). And courts balancing the convenience of the parties may consider "the location of where the conduct complained of occurred." *Terra Int'l,* 119 F.3d at 696. Most of the complained-of events took place in Florida, *see supra* Part I(A), making that forum the most convenient.

The interests of justice strongly favor transfer. In evaluating this factor, courts consider, *inter alia,* "judicial economy" and "the plaintiff's choice of forum." *Terra Int'l,* 119 F.3d at 696. Here, Plaintiff has already brought a similar lawsuit, raising many of the same claims raised in this case, in the Middle District of Florida. The District of North Dakota is thus Plaintiff's *second* choice. This Court should defer to Plaintiff's first choice of venue. And because significant litigation already took place in the Middle District of Florida, including several telephonic conferences, a lengthy in-person hearing, and several written opinions, *see generally supra* Background Part II(B), that court is familiar

---

[14] Additional ATF employees in West Virginia and Washington, D.C. also worked on the investigation into and classification of the FRT-15. *See supra* note 11.

[15] Even if this Court or a transferee court denies a motion to dismiss, it is unlikely that resolution of this case will require witnesses or a trial. Because this action is brought pursuant to the APA, judicial review is limited to the administrative record presented by the agency, and discovery is generally not appropriate. *See Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44 (1985); Mot. in Limine at 3–6, *Rare Breed Triggers, LLC,* No. 6:21-cv-01245 (M.D. Fla. Sept. 17, 2021), ECF No. 45; *see also Pinnacle Armor, Inc. v. United States,* 923 F. Supp. 2d 1226, 1245 (E.D. Cal. 2013) ("Normally, APA cases are resolved on cross-motions for summary judgment . . . ."); *Smirnov v. Clinton,* 806 F. Supp. 2d 1, 21 n.16 (D.D.C. 2011) ("[M]ost APA cases [are resolved] through the consideration of cross motions for summary judgment . . . ."), *aff'd,* 487 F. App'x 582 (D.C. Cir. 2012).

with the legal and factual issues in this case. Transfer would therefore preserve judicial economy.[16] Finally, the Court should transfer this case back to the Middle District of Florida to discourage the sort of forum-shopping that Plaintiff has engaged in here. *See Uviado*, 755 F. Supp. 2d at 786–87 (considering forum shopping in evaluation of a transfer motion). After Plaintiff filed its Complaint in the Middle District of Florida, that court denied its motion for a temporary restraining order, ruled against it on multiple procedural motions, denied its motion for a preliminary injunction, and ultimately dismissed the case without prejudice (for non-compliance with local rules). If this Court allows Plaintiff to bring its case in this district now, it will encourage litigants who lose important preliminary rulings in their chosen forum to quietly back out and re-file their complaint in a different venue. Such conduct should be discouraged. While deference should be given "to a plaintiff's choice of forum," a plaintiff should not be allowed two bites at that apple.

## II.    Plaintiff Lacks Standing to Challenge the Bump-Stock Regulation

Plaintiff does not have standing to challenge the bump-stock regulation. In order to establish standing, a plaintiff must satisfy three requirements: (1) the plaintiff must have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) "there must be a causal connection between the injury and the conduct complained of," *i.e.*, "the injury has to be fairly traceable to the challenged action of the defendant," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up).

Counts III through V of the Complaint challenge, in part, ATF's 2018 bump-stock regulation, 83 Fed. Reg. 66,514. *See* Compl. ¶¶ 206–55. But Plaintiff cannot establish the second prong of standing—traceability—to bring this challenge. *See Lujan*, 504 U.S. at 560; *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021). Plaintiff pleads that "the FRT-15 is not a stock, let alone a bump stock." Compl.

---

[16] Under the local rules of the Middle District of Florida, the case would likely be assigned to the same district court judge who heard the initial litigation as a related or successive action. *See* M.D. Fla. R. 1.07.

¶ 83. Defendants agree. Although the FRT-15 is similar to bump stocks in that both meet the statutory definition of a machinegun under 26 U.S.C. § 5845(b) and ATF Ruling 2006-2, the FRT-15 is *not* subject to the bump-stock regulation. Plaintiff cannot have standing to challenge a regulation to which it is not subject. *Cf. E.L. by White v. Voluntary Interdistrict Choice Corp.*, 864 F.3d 932, 936 (8th Cir. 2017). Plaintiff's alleged injury—its inability to market and sell the FRT-15—stems not from the bump-stock regulation but from § 5845(b) and ATF Ruling 2006-2, and their application to Plaintiff's product. The cease-and-desist letter to Mr. Maxwell does not cite or rely on the bump-stock regulation. *See* Pl.'s Ex. 1. Because there is no "causal connection" between Plaintiff's alleged injury and the bump-stock regulation, the Court should dismiss Counts III through V to the extent they challenge that regulation.

## III.     Plaintiff Has Not Stated a Claim for Relief on the Merits

### A.   The FRT-15 Is a Machinegun

The FRT-15 meets the definition of a machinegun under 26 U.S.C. § 5845(b). Plaintiff's argument that the FRT-15 is not a machinegun, and the opinion letters in support of that argument, are based on the erroneous premise that the phrase "single function of the trigger" refers to the mechanical movement of the trigger, rather than the pull of the trigger by the human shooter. Plaintiff's interpretation of the statute is textually incorrect and has been rejected by numerous courts.

The phrase "pull the trigger" is the ordinary, accepted terminology in common use for how to discharge a firearm today, as it was in the era when the NFA was enacted. *See, e.g.*, Webster's New World Dictionary 1177 (3d ed. 1988) (defining "Russian roulette" as involving "aim[ing] a gun . . . and pull[ing] the trigger"); Dwight D. Eisenhower, Address to the American Society of Newspaper Editors (Apr. 17, 1958), *in* Public Papers of the Presidents of the United States (1958) ("It is far more important to be able to hit the target than it is to haggle over who makes a weapon or who pulls a trigger"). And this phrase has made it into common parlance as an idiom meaning "[t]o make a final decision." *See* Idioms, The Free Dictionary, "pull the trigger," https://idioms.thefreedictionary.com/pull+the+trigger [https://perma.cc/7FXG-HR8S]. Reflecting

the ubiquity of this usage, the Supreme Court has described a machinegun within the NFA's definition as one that "fires repeatedly with a single pull of the trigger." *Staples v. United States*, 511 U.S. 600, 602 n.1 (1994). This interpretation of "single function of the trigger" accords with the ordinary meaning of the term "function," which includes "any of a group of related actions contributing to a larger action." Webster's Ninth New Collegiate Dictionary, 498 (1986); *see also* Random House Thesaurus College Edition, 297 (1984) (a synonym of function is "act").

At the time of the NFA's enactment in 1934, the phrase "single function of the trigger" would have been understood to mean single *pull* of the trigger. Prior to enacting the NFA, Congress received testimony from the then-president of the National Rifle Association that a gun "which is capable of firing more than one shot by a single pull of the trigger, a single function of the trigger, is properly regarded, in my opinion, as a machine gun," whereas "[o]ther guns [that] require a separate pull of the trigger for every shot fired . . . are not properly designated as machine guns." Firearms Act: Hearings Before the Committee on Ways and Means, H.R. 9066, 73rd Cong., 2nd Sess., at 40 (1934).

In *Akins v. United States*, 312 F. App'x 197 (11th Cir. 2009), the Eleventh Circuit found that "single function of the trigger" was appropriately interpreted to mean the single pull of the trigger, not the single movement of the trigger itself.

> A machinegun is a weapon that fires 'automatically more than one shot, without manual reloading, by a single function of the trigger.' 26 U.S.C. § 5845(b). The interpretation by the Bureau that the phrase 'single function of the trigger' means a 'single pull of the trigger' is consonant with the statute and its legislative history. *See Staples v. United States,* 511 U.S. 600, 602 n.1, 114 S.Ct. 1793, 1795 n.1, 128 L.Ed.2d 608 (1994); *National Firearms Act: Hearings Before the Committee on Ways and Means,* 73rd Cong. 40 (1934). After a single application of the trigger by a gunman, the Accelerator uses its internal spring and the force of recoil to fire continuously the rifle cradled inside until the gunman releases the trigger or the ammunition is exhausted.

*Id.* at 200. In other words, ATF's interpretation of the phrase "single function of the trigger" in Ruling 2006-2 (and the subsequent bump-stock regulation, 83 Fed. Reg. 66,514) flows directly from

the statute itself.[17]

The vast majority of other courts to decide the issue since *Akins* have held similarly. *See Cargill v. Barr*, 502 F. Supp. 3d 1163, 1192 (W.D. Tex. 2020) ("'[S]ingle function of the trigger' to mean 'a single pull of the trigger and analogous motions' is the correct interpretation."), *aff'd sub nom. Cargill v. Garland*, 20 F.4th 1004, 1011 (5th Cir. 2021) ("ATF's interpretation of the statute is the best interpretation. The phrase 'single function of the trigger,' as used in the NFA, means 'a single pull of the trigger and analogous motions.'"), *reh'g en banc granted, opinion vacated*, 37 F.4th 1091 (5th Cir. 2022); *Guedes v. ATF*, 920 F.3d 1, 31 (D.C. Cir. 2019) ("The Bureau's interpretation of 'single function of the trigger' to mean 'single pull of the trigger' is a permissible reading of the statute. The Bureau is better equipped than we are to make the pivotal policy choice between a mechanism-focused and shooter-focused understanding of 'function of the trigger.'"), *cert. denied*, 140 S. Ct. 789 (2020); *Aposhian v. Barr*, 958 F.3d 969, 988 (10th Cir. 2020) (single pull of the trigger was a permissible interpretation), *opinion reinstated*, 989 F.3d 890, 891 (10th Cir. 2021) (en banc), *pet. for cert. filed*, No. 21-159 (Aug. 4, 2021); *Gun Owners of Am. v. Barr*, 363 F. Supp. 3d 823, 832 (W.D. Mich. 2019) (single pull of the trigger was a permissible interpretation), *aff'd by equally divided court sub nom. Gun Owners of Am. v. Garland*, 19 F.4th 890 (6th Cir. 2021) (en banc),[18] *pet. for cert. filed*, No. 21-1215 (Mar. 8, 2022); *Freedom Ordnance Mfg.*, 2018 WL 7142127, at *6 (rejecting plaintiff's position that its device "does not enable the user to fire more

---

[17] Ruling 2006-2 is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). However, the Court does not need to rely on deference where, as here, the agency has adopted "the position [the Court] would adopt even if . . . [the Court] were interpreting the statute from scratch." *Edelman v. Lynchburg College*, 535 U.S. 106, 114 (2002); *see also Becerra v. Empire Health Found., for Valley Hosp. Med. Ctr.*, 142 S. Ct. 2354, 2362 (2022) (holding that an agency's "regulation correctly construes the statutory language at issue" because, *inter alia*, "[t]he provisions are technical" and "[t]he text and context support the agency's reading").

[18] At least six judges of the Sixth Circuit further stated that ATF's interpretation was the "best" interpretation. *See Gun Owners of Am.*, 19 F.4th at 909 (opinion of White, J.); *id.* (opinion of Gibbons, J.).

than one shot per single function of the *firearm's* trigger because the *firearm's* trigger must reset before each shot, notwithstanding the user's constant pull of the ERAD trigger").[19]

The parties generally agree on how the FRT-15 operates, namely that (1) the trigger is pulled, starting the cycle of operation, (2) as the bolt carrier moves to the rear, the hammer is driven into the top of the trigger, forcing it forward, (3) the bolt carrier strikes the locking bar which locks the trigger in a forward position, (4) as the bolt carrier moves forward, the trigger is held in place, (5) as the bolt carrier continues to move forward, it strikes the locking bar, releasing the trigger. *See* Pl.'s Ex. 5, at 4, 39; Compl. ¶¶ 91–96. But Plaintiff claims that "[u]ntil the trigger is functioned again, the firearm will not and cannot fire." *Id.* ¶ 100. Under the correct interpretation of the word "functioned" to mean "pulled," Plaintiff's claim is wrong.[20] As reflected in the exhibits attached to the Complaint, continuous

---

[19] The Navy-Marine Corps Court of Criminal Appeals is the only court to have adopted a contrary position in a non-vacated decision. *See United States v. Alkazahg*, No. 202000087, 2021 WL 4058360, *12 (N-M. Ct. Crim. App. Sept. 7, 2021). That decision was wrongly decided. Moreover, *Alkazahg* dealt with bump stocks, and the court was concerned with the external pressure from the shooter's non-firing hand that is necessary for a bump stock to keep shooting, but that is not at issue here. *Id.*

[20] Plaintiff briefly argues that, even under ATF's interpretation of the statute, the FRT-15 does not qualify as a machinegun. *See* Compl. ¶¶ 120–22. The Court should reject this alternative argument. In the first litigation, Plaintiff stated the following in support of its position that "single function of the trigger" referred to the mechanical operation of the trigger and not the "human function" of the "trigger *finger*":

> [E]ven though the operator's finger may stay relatively in the same position, a trigger (such as the FRT-15) that forcibly and mechanically resets requiring the trigger to function again in order to expel another round of ammunition is not a "machinegun" because there is not more than one round of ammunition expelled per a "single function *of the trigger*."

Mot. for Prel. Inj. 19–20, *Rare Breed Triggers, LLC*, No. 6:21-cv-01245 (M.D. Fla. Aug. 2, 2021), ECF No. 2 (emphasis in original). Plaintiff has thus conceded that the FRT-15 will fire multiple rounds automatically with a single *pull* of the trigger, and can only succeed on the merits if the Court adopts the mechanical interpretation of the phrase "single function of the trigger." And in any event, the materials attached to the Complaint (including the patent for the FRT-15) confirm that a single pull of the trigger can result in the firing of multiple rounds. *See* Pl.'s Ex. 5, at 39; *see also id.* at 4 ("[T]he shooter may fire a second projectile merely by maintaining the initial trigger pull and allowing the self-acting internal mechanism to complete its automatic cycle of operation.").

pressure on the trigger—after the initial pull—causes the firearm to continue to shoot. Indeed, the initial classification request by Company A states that the AR1 (like the FRT-15) "allows the user to make a decision in which they leave rearward pressure off the trigger to stop the firing sequence or re-engage rearward pressure on the trigger to continue the firing sequence." Pl.'s Ex. 5, at 54. However, when rearward pressure *remains* after an initial pull, the firearm equipped with such a device continues to fire, as shown by the "zip-tie" test. *See id.* at 51. A single, constant pressure from the shooter's finger constitutes a "single function of the trigger," meaning that, under the correct interpretation of the statute, the FRT-15 is a machinegun. The record thus amply supports ATF's classification.

Plaintiff attaches to the Complaint four opinions by purported "experts" to support its position that the FRT-15 is not a machinegun. The opinion letters do not undermine ATF's classification decision. Notably, these opinions are flawed in that they are premised on the same incorrect interpretation of the phrase "single function of the trigger" that Plaintiff advances before the Court, *i.e.* that this phrase refers to the mechanical process of the firearm. *See* Pl.'s Ex. 9, at 1–2 (letter of Kevin McCann) (concluding that "a rifle equipped with the FTM is not a '*machinegun*'" because the design prevents "hammer follow"); Pl.'s Ex. 10, at 2 (letter of Daniel O'Kelly) (opining that, in the case of a machinegun, "it isn't the fact that the shooter holds continuous pressure against the trigger, it's the fact that he 'functions' the trigger by pulling it to the rear only once and holding it there, and multiple shots result from this 'single function of the trigger'"); Pl.'s Ex. 11, at 2 (letter of Rick Vasquez) (asserting that ATF "interprets the term 'single <u>function</u> of the trigger' . . . to mean a single <u>movement</u> of the trigger[, e]ach 'pull' of a trigger constitutes a single movement"[21]); Pl.'s Ex. 12, at 2 (letter of Brian Luettke) (stating that the Sixth Circuit's vacated opinion in *Gun Owners of America,*

---

[21] This is wrong; since 2006, when Mr. Vasquez was the Assistant Chief of ATF's Firearms Technology Branch (the predecessor to FTISB), ATF has interpreted the phrase "single function of the trigger" to mean single pull of the trigger, not movement of the trigger itself. *See Akins v. United States*, 82 Fed. Cl. 619, 621 (Fed. Ct. Cl. 2008).

*Inc. v. Garland*, 992 F.3d 446 (6th Cir. 2021), finding a single function of the trigger to mean the mechanical process of the trigger, is the appropriate standard and then concluding that the FRT-15 does not allow a firearm to function "as a 'hammer follow' machinegun").

The fact that the FRT-15 does not allow hammer follow is not determinative. As stated in ATF's Report of Examination, "[a]lthough the presence of hammer follow may require classification of a firearm as a machinegun, this is just one way in which a firearm may satisfy the 'machinegun' definition." Pl.'s Ex. 5, at 3. Separately, Mr. O'Kelly opines that a machinegun is not created by continuous pressure against the trigger, but by pulling the trigger "to the rear only once and holding it there." Pl.'s Ex. 10, at 2. But applying continuous pressure to the trigger and "holding it there" after pulling it are functionally the same thing; in either case the trigger is not released. Mr. O'Kelly admits that "it is true that a shooter may fire successive shots quickly by keeping pressure on the trigger," but then claims the shooter "must nevertheless make a subsequent movement of the trigger to the rear for each shot fired." *Id.* at 3. But much like his statement quoted previously, this makes little sense. If continuous pressure causes successive shots, there is no need to make "a subsequent movement" and to the extent the shooter's finger moves slightly when the trigger is pushed into it, that is not *a release and separate pull* of the trigger. *See Guedes v. ATF*, 356 F. Supp. 3d 109, 132 (D.D.C.) ("Although operating a bump stock may cause slight movements of the trigger finger, it does not require a shooter to consciously and repeatedly exert force to depress the trigger multiple times;" instead, "[a]fter the initial exertion of force, a shooter is able to discharge multiple rounds by maintaining constant pressure on the trigger."), *aff'd*, 920 F.3d 1 (D.C. Cir. 2019).[22]

---

[22] Plaintiff also alleges that ATF had previously "approved" what they characterized as a "forced (positive) reset trigger similar to the FRT-15," the MR3 trigger. Compl. ¶ 154. This characterization of the MR3 trigger is incorrect; importantly, the MR3 device has a disconnector, which locks the hammer in position, requiring the shooter's finger to release the trigger before it can move. *See* Pl.'s Ex. 2, at 2, ECF No. 1-2 (noting presence of disconnector).

In the Complaint, Plaintiff claims that the zip-tie test is "faulty" and "misleading" and that the addition of the zip-tie manufactured a machinegun. Compl. ¶¶ 176, 261(f). These assertions are incorrect. First, the addition of the zip-tie did not create a machinegun, as a zip-tie is not "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b). Second, because a zip-tie, unlike a finger, cannot move on its own volition, the zip-tie only illustrates that once the trigger is depressed, the firearm continues to fire, without the need to pull *and* release *and* pull again. *See* Pl.'s Ex. 5, at 51 (the weapon fired "<u>without the trigger being released</u>" (emphasis in original)).

For these reasons, the FRT-15 meets the definition of a machinegun under 26 U.S.C. § 5845(b). At a minimum, the ATF's determination as such was not arbitrary and capricious, and Plaintiff's claims under the APA therefore fail.

### B.     The Statute Is Not Unconstitutionally Vague

Plaintiff's void-for-vagueness challenge also fails. Plaintiff claims that the bump-stock regulation is unconstitutionally vague. *See* Compl. ¶ 83. As discussed above, *see supra* Part II, the FRT-15 is not subject to the bump-stock regulation, so Plaintiff's challenge, as framed in the Complaint, is not properly presented.

To the extent the Court construes Plaintiff's challenge as a challenge to the definition of a machinegun in 26 U.S.C. § 5845(b), the Court should dismiss this challenge. A criminal or quasi-criminal law is unconstitutionally vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). To establish that a law is unconstitutionally vague on its face, "the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497 (1982). The language of § 5845(b) is not unconstitutionally vague.

Here, the meaning of the phrase "single function of the trigger" is clear: it means "single pull of the trigger," such that a shooter can fire multiple rounds without the need to pull and release and pull again. This reading is "unambiguously the best interpretation" of the statute. *Gun Owners of Am.*, 19 F.4th at 909 (opinion of Gibbons, J.); *see also Cargill*, 20 F.4th at 1011. At most, the statute could be read as allowing two interpretations: the human functioning of the trigger, as ATF and most courts interpret the statute, or the mechanical functioning of the trigger, as Plaintiff has argued. But even assuming both of those interpretations are reasonable, *see, e.g.*, *Gun Owners of Am.*, 363 F. Supp. 3d at 832, that would mean only that the phrase "single function of the trigger" is *ambiguous*, not vague. A "statute is ambiguous" if it is "capable of being understood in two or more possible senses or ways." *Chickasaw Nation v. United States*, 534 U.S. 84, 90 (2001) (quoting Webster's Ninth New Collegiate Dictionary 77 (1985)). A mere ambiguity, if one exists, does not render the statute void as "standardless." *Williams*, 553 U.S. at 304.

The vagueness doctrine does not require "perfect clarity and precise guidance." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989); *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1214 (2018) (reaffirming that "[m]any perfectly constitutional statutes use imprecise terms"); *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 552 (5th Cir. 2008) ("[F]or [an] ordinance to pass constitutional muster" under the void-for-vagueness doctrine, it need not "delineate the exact actions a [regulated party] would have to take to avoid liability."). Indeed, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). Accordingly, courts have rejected vagueness challenges to criminal laws imposing standards as open-ended as: "near" a courthouse, *Cox v. Louisiana*, 379 U.S. 559, 568 (1965); "immoral purposes," *United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009); and "unreasonable noise," defined to include noise "which, under the circumstances of time, place, and manner in which it is produced . . . annoys . . . a reasonable person of normal sensitivities," *Munn v. City of Ocean Springs*, 763 F.3d 437, 438–39 (5th Cir.

2014) (emphasis omitted). The definition of a machinegun is at least as precise as the laws upheld in these cases.

Moreover, courts have repeatedly upheld laws defining unlawful firearms against vagueness challenges. *See, e.g.*, *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 266 (2d Cir. 2015); *United States v. Wojcikiewicz*, 403 F. App'x 483, 486 (11th Cir. 2010); *United States v. 16,179 Molso Italian .22 Caliber Winler Derringer Convertible Starter Guns*, 443 F.2d 463, 464 (2d Cir. 1971); *United States v. Quiroz*, 449 F.2d 583, 585 (9th Cir. 1971); *United States v. Campbell*, 427 F.2d 892, 893 (5th Cir. 1970) (per curiam); *United States v. Wick*, No. CR 15-30-M-DLC, 2016 WL 10612608, at *3–4 (D. Mont. Mar. 11, 2016); *United States v. Catanzaro*, 368 F. Supp. 450, 454 (D. Conn. 1973); *see also United States v. Kelly*, 276 F. App'x 261, 267 (4th Cir. 2007) (rejecting the argument that § 5845(b) is unconstitutionally vague); *Roberts v. United States*, No. 2:04-cr-295-PMD, 2007 WL 9754483, at *7 (D.S.C. Oct. 30, 2007) (on an ineffective assistance of counsel claim, holding that the plaintiff had "made no showing whatsoever that 26 U.S.C. § 5845 is unconstitutionally vague"). As the Second Circuit reasoned persuasively in *New York State Rifle & Pistol Ass'n*, "statutory language" at issue in that case "dates at least to the 1994 federal assault-weapons ban," and "there [was] no record evidence that it [had] given rise to confusion at any time" in the decades since. 804 F.3d at 266. Plaintiff here does not allege any such confusion either.

Plaintiff's void-for-vagueness claim is also unlikely to succeed on the merits for an additional reason: ATF provides for an administrative process through which regulated entities may obtain classifications as to whether their particular products are lawful under federal law. *See* NFA Handbook, *supra*, § 7.2.4; *see also infra* Part III(C). "[L]icensing . . . requirements[] are afforded considerable deference in the vagueness analysis," in part "because the regulated party may 'have the ability to clarify the meaning of the regulation[s] . . . by resort to an administrative process.'" *United States v. Clinical Leasing Serv., Inc.*, 925 F.2d 120, 122 (5th Cir. 1991) (final alteration in original) (quoting *Vill. of*

*Hoffman Ests.*, 455 U.S. at 498). Here, firearm manufacturers have such an opportunity to seek voluntary classifications as to whether a particular item is a machinegun. Plaintiff therefore cannot be heard to complain that it has no means of ascertaining whether any product that it sells falls within that definition. For all of these reasons, the Court should dismiss Plaintiff's void-for-vagueness claim.

### C.     ATF Did Not Violate Plaintiff's Procedural Due Process Rights

Plaintiff also claims that its procedural due process rights were violated because ATF allegedly did not give it an opportunity to be heard and did not consider Plaintiff's "expert" opinions. Compl. ¶ 143–94, 265–80. This claim also fails as a matter of law.

Plaintiff made a deliberate choice not to submit the FRT-15 for classification before selling it. There is no requirement under federal law to submit a device to ATF for classification. *See Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 599 (1st Cir. 2016) ("ATF permits—but does not require—gun makers to seek classification letters from ATF prior to manufacturing a gun."). However, ATF encourages such submissions for the very reason Plaintiffs complain of here. *See* NFA Handbook, *supra*, § 7.2.4 ("[A] firearms manufacturer is well advised to seek an ATF classification before going to the trouble and expense of producing [a device]."); *Sig Sauer, Inc. v. Jones*, 133 F. Supp. 3d 364, 367 n.2 (D.N.H. 2015) ("The ATF encourages firearms manufacturers to submit devices for classification before they are offered for sale. It responds to classification requests with letter rulings that represent 'the agency's official position concerning the status of the firearms under Federal firearms laws.'" (quoting NFA Handbook, § 7.2.4.1)).

Plaintiff was likely aware that the device with patent number 10,514,223 B1 was related to the AR1 device that had been classified as a machinegun by ATF in 2018, particularly because one of Plaintiff's experts, Rick Vasquez, submitted that device to ATF on behalf of Company A. *See* Pl.'s Ex. 5, at 54. Plaintiff nevertheless chose to submit the FRT-15 to four former ATF employees instead

of submitting the device to ATF, perhaps in order to avoid the classification of the device as a machinegun.

Although Plaintiff declined to submit its device to ATF for classification, Plaintiff appears to contend that the ATF classification process in general violates due process because it does not include a hearing. That argument also fails as a matter of law. *See Akins*, 2008 WL 11455059, at *6 (finding no hearing required because "although Plaintiff identifies an important interest . . . his ability to manufacture and sell . . . that interest is limited by the pervasive federal regulation of the manufacture and sale of firearms"). Nor was Plaintiff entitled to any particular process prior to ATF's issuance of a cease-and-desist letter. Plaintiff's due process claims are virtually identical to those rejected by the Tenth Circuit in *York v. Secretary of Treasury*, 774 F.2d 417 (10th Cir. 1985). In that case, ATF became aware that the plaintiff was selling a gun called the YAC STEN MK II. After examining a sample obtained through normal commercial channels, ATF classified it as a machinegun. As a result, "agents told York to recall the weapons already sold and advised purchasers by letter to return the guns. York resisted the recall and filed this action," alleging the ruling was arbitrary and capricious and violated his rights as seller of the gun to due process and equal protection. *Id.* at 419. Applying the three-factor test under *Mathews v. Eldridge*, 424 U.S. 319 (1976), the court found no due process violation.[23] As the court explained:

> York has an important interest affected by the BATF decision, which banned further sales of his gun and required him to recall and give refunds for guns already sold. But the two other considerations weigh heavily in favor of the government. The risk of error is low in this case because the evidence upon which the government relied to classify the STEN as a machinegun is scientific, engineering data—sharply focused, easily documented and not based to a significant extent upon witness credibility or other subjective determinations. And the government has a strong interest in regulating automatic weapons capable of criminal use, and in being able to act quickly to stem the flow of such weapons to the public.

*York*, 774 F.2d at 421 (internal citation omitted).

---

[23] The Court also found the classification was not arbitrary and capricious. *Id.* at 420.

As it did in its unsuccessful action in the Middle District of Florida, Plaintiff is again challenging the ATF classification determination underlying the agency's July 26, 2021 cease-and-desist letter. Plaintiff's accusations in the complaint that Defendants improperly "closed" the administrative record without allowing Plaintiff the opportunity to add materials after the fact, Compl. ¶¶ 144, 180–81, 280, fundamentally misunderstands the nature of judicial review of agency action under the APA. In APA actions, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam). The administrative record "consists of all documents and materials directly or indirectly considered by agency decision-makers." *Lee Mem'l Hosp. v. Burwell*, 109 F. Supp. 3d 40, 46–47 (D.D.C. 2015). The administrative record is not something that the agency "deci[des]" to close. Compl. ¶ 180. The record is tied to the agency action that is challenged in a particular lawsuit. In the first litigation (and in this litigation), Plaintiff chose to file a complaint challenging ATF's cease-and-desist letter and the underlying classification decision, so the administrative record consisted of all of the materials that were before ATF when it took those actions.[24] The agency cannot add materials after the decision was made because those materials could not have been considered by the agency at that time. Indeed, if Plaintiff was correct that the administrative record for the cease-and-desist letter could be "opened" and "closed" at will, then that would mean that the challenged agency action was not a "final agency action" and would thus not be subject to judicial review. 5 U.S.C. § 704.

Finally, it should be noted that the due process ordinarily allowed to parties accused of violating a criminal statute is provided through a criminal trial. Indeed, criminal defendants are

---

[24] By contrast, if Plaintiff had challenged ATF's November 15, 2021 letter confirming that the FRT-15 was classified as a machinegun, the administrative record for that action would consist of all the materials considered by ATF in sending that letter, including the materials submitted by Mr. Maxwell to ATF on November 2, 2021. Defendants do not concede, however, that the November 15 letter constitutes a "final agency action." 5 U.S.C. § 704.

generally not even allowed to present their case at a grand jury indictment. *See, e.g.*, *United States v. Calandra*, 414 U.S. 338, 343–44 (1974). Here, Plaintiff has expressly chosen to disregard ATF's cease-and-desist letter. *See* Pl.'s Ex. 4, at 3. Should the government bring charges against Plaintiff or Mr. Maxwell, they will be afforded due process at the appropriate trial stages.

### D.    Plaintiff's 19 U.S.C. § 1610 Claims Should Be Dismissed

The Complaint seeks an order "compelling DOJ to commence a condemnation action" under 19 U.S.C. § 1610, alternatively because DOJ "unlawfully withheld and/or unreasonably delayed" such a condemnation action under the APA, or because DOJ has a "clear legal duty" to do so such that a writ of mandamus is proper. Compl. ¶¶ 199–200, 204–05. These claims fail for several reasons.

First and most obviously, § 1610 does not apply to seizures by ATF. Section 1610 states:

> If any vessel, vehicle, aircraft, merchandise, or baggage is not subject to section 1607 of this title, the appropriate customs officer shall transmit a report of the case, with the names of available witnesses, to the United States attorney for the district in which the seizure was made for the institution of the proper proceedings for the condemnation of such property.

19 U.S.C. § 1610. The statute only applies to seizures by a "customs officer," *i.e.*, an officer of the United States Customs and Border Protection ("CBP") of the Department of Homeland Security ("DHS"). Indeed, Title 19 of the U.S. Code deals with "Customs Duties." It has nothing to do with this case in which ATF, a subagency of DOJ and not DHS, has allegedly seized property within the United States.

Second, § 1610 expressly does not apply to seizures of merchandise "subject to section 1607 of this title." Section 1607 covers instances where the "seized merchandise is merchandise the importation of which is prohibited." *Id.* § 1607. The possession of a machinegun is unlawful in most circumstances. *See* 18 U.S.C. § 922(o). As explained above, the FRT-15 is a machinegun. *See supra* Part III(A). Thus, proceedings under 19 U.S.C. § 1610 would not be necessary even if the FRT-15 devices had been seized by a customs officer.

Third, no party has posted bond to initiate condemnation proceedings. "After seizure of an article by the United States Customs Service, a claimant to it has essentially two options. He may pursue an administrative remedy . . . or he may challenge the seizure in a judicial forfeiture action initiated by the Government." *United States v. Von Neumann*, 474 U.S. 242, 244 (1986). Thus, a party may file an administrative petition with CBP for remission of forfeiture. *See* 19 U.S.C. § 1618; 19 C.F.R. §§ 171.1, 171.2. Alternatively, the party may file a claim for the property, post the required bond, and thereby request that the matter be referred to the appropriate U.S. Attorney for review and initiation of judicial forfeiture proceedings. *See* 19 U.S.C § 1608; 19 C.F.R. § 162.47. Here, Plaintiff has taken neither of these actions, and until a party posts bond under § 1608, no proceedings under § 1610 can be initiated.

Fourth, because no forfeiture proceedings have commenced, the proper means for Plaintiff to challenge ATF's seizure is Federal Rule of Criminal Procedure 41(g). Rule 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g); *see also* Fed. R. Civ. P. Supp. R. G. (outlining procedures for *in rem* proceedings in detail). "After the government initiates forfeiture proceedings and notifies a claimant of the proceedings, a claimant may no longer use [Rule 41(g)], but instead must submit to the statutory procedures governing civil forfeiture proceedings." *United States v. One 1974 Learjet 24D*, 191 F.3d 668, 673 (6th Cir. 1999); *see also United States v. Mendez*, 860 F.3d 1147, 1150 (8th Cir. 2017) ("[I]n the absence of any criminal proceedings or civil forfeiture proceedings, the time for bringing a Rule 41(g) claim runs from the expiration of the statute of limitations for filing the criminal or civil forfeiture case." (emphasis omitted)). However, Plaintiff cannot bring a Rule 41(g) claim in this Court. "The motion must be filed in the district where the property was seized," Fed. R. Crim. P. 41(g), and the Complaint does not allege that any property was seized in this district.[25]

---

[25] In any event, a § 1610 proceeding would also have to take place in "the district in which the seizure was made." 19 U.S.C. § 1610.

33

Finally, neither of the causes of action Plaintiff cites apply to a claim for an order to initiate condemnation proceedings under 19 U.S.C § 1610. "[J]udicial review" under the APA is limited to the universe of claims challenging "final agency action for which there is no other adequate remedy in a court."[26] 5 U.S.C. § 704. "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). As just described, Rule 41(g) provides a mechanism for judicial review of a law enforcement agency's seizure of property before forfeiture proceedings have commenced. And once forfeiture proceedings have commenced, the statutory framework for such proceedings would provide the means for judicial review. *Cf. Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984) (explaining the circumstances under which a statutory scheme precludes judicial review under 5 U.S.C. § 701(a)). APA review is thus precluded.

As for mandamus, a court has jurisdiction to issue a writ of mandamus under 28 U.S.C. § 1361 "against an officer of the United States only in extraordinary situations and when the plaintiff can establish (1) 'a clear and indisputable right to the relief sought,' (2) the state officer 'has a nondiscretionary duty to honor that right,' and (3) there is 'no other adequate remedy.'" *Mitchael v. Colvin*, 809 F.3d 1050, 1054 (8th Cir. 2016) (quoting *Castillo v. Ridge*, 445 F.3d 1057, 1060–61 (8th Cir. 2006)). Mandamus is proper only when "the duty owed to the plaintiff [is] ministerial and a positive command so plainly prescribed as to be free from doubt." *Id.* (quoting *Keeny v. Sec'y of the Army*, 437 F.2d 1151, 1152 (8th Cir. 1971)). None of these requirements are satisfied here. There is no "clear and indisputable right" to have a § 1610 proceeding initiated because (a) § 1610 does not apply to ATF,

---

[26] As one court noted, "[u]nder no reasonable interpretation of 'finality' can the seizure of goods, which sets off a codified procedure for forfeiture or petitions, be considered the 'consummation' of an 'agency's decisionmaking process.'" *LKQ Corp. v. U.S. Dep't of Homeland Sec.*, 369 F. Supp. 3d 577, 588 (D. Del. 2019) (quoting *Ocean Cnty. Landfill Corp. v. EPA*, 631 F.3d 652, 655 (3d Cir. 2011)). A seizure thus begins a process—defined by statute and regulation—that leads towards settlement, administrative or judicial forfeiture, or a return of the property. *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 241 (1980) (holding that initiation of enforcement action is not final agency action under the APA).

(b) the FRT-15 is unlawful, and so the carveout in § 1607 applies, and (c) no party has posted bond under § 1608. The duty is not "nondiscretionary" because, even assuming § 1610 did apply, that section does not provide a timeline for when proceedings must be initiated after a seizure. And alternative remedies are available under Rule 41(g) and, if the property had been seized by CBP, § 1618.

## IV.   Declaratory Judgment Would Not Be Appropriate

Finally, even assuming Plaintiff could ultimately demonstrate that it was correct on the merits of its claim that the FRT-15 is not a machinegun, the Court should nevertheless dismiss the Complaint because the only remaining relief sought, a declaratory judgment, is inappropriate in this case. *See generally* Compl. ¶¶ 220, 236, 255, 264, 280 (not seeking an injunction). The "general rule" that a court "must exercise its jurisdiction over a claim . . . yields to practical considerations and substantial discretion when the federal complaint seeks a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. A district court has unique and substantial discretion under the Declaratory Judgment Act." *Wagstaff & Cartmell, LLP v. Lewis*, No. 21-2266, 2022 WL 2760324, at *8 (8th Cir. July 15, 2022) (citations omitted) (internal quotation marks omitted). The declaratory judgment sought in this case is equitable in nature. *See Northgate Homes, Inc. v. City of Dayton*, 126 F.3d 1095, 1099 (8th Cir. 1997). A common maxim states that "equity aids the vigilant, not those who sleep on their rights." *E.g. Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998). Here, Plaintiff had an opportunity to seek classification from ATF prior to manufacturing and distributing the FRT-15, but chose not to. *See supra* Part III(C). The Court should discourage this thwarting of the administrative process and, in its discretion, decline to exercise jurisdiction under 28 U.S.C. § 2201.

## CONCLUSION

For the reasons explained above, Plaintiff's Complaint should be dismissed, or, in the alternative, transferred to a proper venue.

DATED: August 9, 2022     Respectfully submitted,

             BRIAN M. BOYNTON
             Principal Deputy Assistant Attorney General

             LESLEY FARBY
             Assistant Branch Director

             */s/ Michael P. Clendenen*
             MICHAEL P. CLENDENEN
             DC Bar No. 1660091
             Trial Attorney
             Civil Division, Federal Programs Branch
             U.S. Department of Justice
             1100 L Street, NW
             Washington, DC 20005
             Phone: (202) 305-0693
             E-mail: michael.p.clendenen@usdoj.gov

             *Counsel for Defendants*