UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

RARE BREED TRIGGERS, LLC,

    Plaintiff,

v.

MERRICK GARLAND, in his official capacity as Attorney General of the United States; et al.,

    Defendants.

CASE NO.: 3:22-cv-00085-ARS

## PLAINTIFF'S VERIFIED MOTION FOR LEAVE TO CONDUCT VENUE DISCOVERY AND TO ABATE PROCEEDING UNTIL SUCH DISCOVERY IS COMPLETE

Plaintiff, RARE BREED TRIGGERS, LLC, by and through counsel, files this Motion and in support thereof states:

### I.    Introduction

Pending before this Court is Defendants' Motion to Dismiss brought in part under Federal Rules of Civil Procedure 12(b)(3) and their alternative Motion to Transfer under 28 U.S.C. § 1404(a). Plaintiff opposes Defendant's Motion and believes that it can establish venue is proper in the District of North Dakota under 28 U.S.C. 1391(e)(1)(C), by showing that it "reside[d]" in this District at the relevant time. *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1200 (8th Cir. 1990) (proper assessment of venue is based upon circumstances *when the motion to dismiss for improper venue is filed*, not before).

Nevertheless, Plaintiff must still, in its opposition memorandum, respond to specific issues raised by Defendants, namely: (i) the issue of where this action should be transferred if the Court rules venue is not proper in the District of North Dakota under Section 1391(e); and (ii) where this Court should transfer this action to if the Court rules that venue is proper in this District but finds

that venue should be transferred under Section 1404(a). (Dkt. 20, 21.) When applying 28 U.S.C. 1391(e)(1)(B) (which focuses on where Defendants' alleged actions and omissions giving rise to this cause occurred), Defendants' only answer to these questions is to point to the Middle District of Florida, but that is a flat misdirection as set forth in Section II below.

Defendants have the burden of proving their improper venue assertions under Eighth Circuit precedent. *See United States v. Orshek*, 164 F.2d 741 (8th Cir. 1947) (a defendant who moves to dismiss a complaint for improper venue bears the burden of showing venue is improper). It should be noted that almost 20 years after *Orshek*, the Eighth Circuit implied in dicta (without acknowledging *Orshek*), that the plaintiff bears the burden to establish facts to support the chosen venue. *Cohen v. Newsweek, Inc.*, 312 F.2d 76, 78 (8th Cir. 1963). Nonetheless, the district courts throughout the Eighth Circuit have applied *Orshek* to place the burden on defendant to prove that venue is improper.[1] But regardless of who has the burden under Section 1391, venue discovery

---

[1] *C.H. Robinson Worldwide v. Tu*, No. 19-1444 (MJD/BRT), 2019 U.S. Dist. LEXIS 22436, *6 (D. Minn. Dec. 20, 2019) (in addition to finding defendant had the burden of proof, finding that to "discharge that burden, defendant must submit affidavits or other evidence defeating venue in the chosen forum); *Cooper v. Dep't of the Army*, No. 4:13CV3086, 2013 U.S. Dist. LEXIS 176929, *12 (D. Neb. Dec. 17, 2013); *Pkg. Contr v. Smith & Loveless*, No. 19-4067, 2020 U.S. Dist. LEXIS 31972, *13 (D. S.D. Feb. 25, 2020); *Country Inns & Suites by Carlson, Inc. v. Praestans One, LLC*, No. 13-cv-3381 (PJS/LIB), 2014 U.S. Dist. LEXIS 97379, *16 (D. Mn. June 20, 2014) ("When a defendant seeks dismissal for improper venue under Rule 12(b)(3) . . . it bears the burden of demonstrating the plaintiff's chosen venue lacks a sufficient connection to the parties.") Other districts within the Eighth Circuit have held since *Orshek* the plaintiff has such burden, although who had the burden did not seem to be in dispute. *See e.g., Valspar Corp. v. PPG Indus.*, No. 16-cv-1429 (SRN/SER), 2017 U.S. Dist. LEXIS 123501, *14 (D. Minn. Aug. 4, 2017); *Coug & Co. v. Cougar Paws, Inc.*, No. 4:21-cv-271-JAJ-HCA, 2022 U.S. Dist. LEXIS 83051, *18 (S.D. Iowa Jan. 5, 2022) (rejecting *Cohen* and relying on *Orshek* in finding defendant had the burden on a Rule 12(b)(3) motion); *Pers. Wealth Partners, LLC v. Gary Dean Ryberg & Kestra Inv. Servs., LLC*, No. 21-cv-2722 (WMW/DTS), 2022 U.S. Dist. LEXIS 154303, *5 (D. Minn. Aug. 26, 2022); *Bridgon v. Slater*, 100 F. Supp. 2d 1162, 1164 (W.D. Mo. 2000).

Plaintiff was unable to find a case within this district squarely addressing this issue. This Court should follow *Orshek* and join the majority of the district courts within the Eighth Circuit which lay the burden on the defendant to prove venue is improper under Rule 12(b)(3) motions.

would still be necessary. Defendants have the burden to show transfer is appropriate under Section 1404(a). *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997).

## II. Argument

To support their application of Section 1391(e)(1)(B), Defendants allege that "[t]he events that gave rise to this cause occurred primarily in the Middle District of Florida [because] the cease-and-desist letter *was issued from* ATF's Office in Tampa, Florida and received by [Kevin] Maxwell [RBT's owner] in that district." (Dkt 21 at 23.) (Emphasis added.) This statement is false.[2] As an initial matter, it is true that Maxwell was handed the cease-and-desist letter by the Tampa office, in Orlando, and that the letter was signed by Craig Saier, as Special Agent in Charge of ATF's Tampa Field Office, and further that it was on the letterhead of the same office. (Dkt. 1-1 at 1.) Nonetheless, the cease-and-desist order did not "issue" from the Tampa office as the ATF claims because Agent Saier told Maxwell at the meeting that his "chain of command" directed him to write the letter. In fact, Saier told Maxwell that he had never even seen the classification report by the ATF determining the FRT-15 to be a "machine gun", that he didn't know who had prepared it, and that he had not seen any of the facts or data that were relied on to make the determination that the FRT-15 is a "machinegun" as defined by federal law.

---

Defendants cite *E.W. Wylie Corp. v. Transp. Tech. Servs.*, No. 3:11-cv-47, 2011 U.S. Dist. 160903 (D. N.D. Oct. 24, 2011). (Dkt. 21 at 20.) However, *Wylie* is not at all dispositive on the issue of who bears the burden under a Rule 12(b)(3) motion. Wylie's focus was a dispute over personal jurisdiction where there was a forum selection clause, favoring North Dakota, in an unsigned contract under which there was performance. *Id.* at *3. The Honorable Ralph R. Erickson's opinion focused on personal jurisdiction and the district courts of the Eighth Circuit have uniformly placed the burden of proving personal jurisdiction on plaintiffs. *See e.g., Wetch v. Crum & Forster Commer. Ins.*, No. 5:17-CV-05033-JLV, 2018 U.S. Dist. LEXIS 223615, *34 (D. S.D. Dec. 6, 2018.) The court in *Wylie* did not separately address venue, treating the personal jurisdiction and venue interchangeably, and thus is of no precedential value.

[2] The subject cease-and-desist letter was dated July 26, 2021 (Dkt 1-1 at 1) and the Court's convenience is attached as Exhibit 1.

Clearly then, the cease-and-desist order did not "issue" from the Tampa field office, but rather came from a "chain-of-command" that was not located at Agent Saier's office. His office simply took a dictation from someone else and placed it on a piece of paper. That fact appears abundantly true because Agent Saier could not in good faith sign the cease-and-desist letter when he had no personal knowledge about these matters that would have permitted him to faithfully issue or write the cease-and-desist letter. This also means that the same testing, communications, and classification decisions at issue in this lawsuit were made by the ATF (or by Defendants) *at some other location* besides that Tampa office. And when examining the appropriateness of venue under section 1391(e)(1)(B), the court must focus on the relevant activities *of the defendant* and those actions and omissions having a close nexus to the wrong. *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995). In *Woodke*, the Eighth Circuit acknowledged Section 1391(e)(1)(B) does not posit a single appropriate district for venue and that venue may be appropriate in several different districts, provided only that a substantial part of the events giving rise to the claim occurred there. *Id.*

The question of where substantial parts of the Defendants' acts and omissions giving rise to the claims occurred is an open question that is clearly a broader than (and all but certainly outside) the Middle District of Florida. In that regard, Defendants will not say who gave Saier these orders or where they came from. Yet, that question is integral to determining which district *or districts* qualify as proper venues under Section 1391(e)(1)(B) and which do not. *Woodke*, 70 F.3d at 985.

Plaintiff seeks discovery so that it may address these issues and, collaterally, attack what appear to be false statements to this Court. Without discovery, Plaintiff will be relegated to blindly opposing Defendants' Section 1391(e)(1)(B) and Section 1404(a) contentions. Plaintiff's

4

Complaint allegations accurately paint a stark portrait of how Defendants have abused all processes to arbitrarily, capriciously, and maliciously put Plaintiff out of business while simultaneously depriving Plaintiff of the ability to be heard or question Defendants' actions. Plaintiff seeks discovery so that, at bare minimum, venue related decisions will be in the sunshine and based upon facts – not just Defendants' unchecked versions of them.

Generally, district courts have broad discretion in determining whether to grant limited discovery to explore jurisdictional facts, including venue. "[W]here issues arise to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978); *Johnson v. Emerson Elec. Co.*, No. 4:13-cv-1240-JAR, 2013 U.S. Dist. LEXIS 140458 (E.D. Mo. Sept. 30, 2013).

The Court should also note that as part of their improper venue argument under Rule 12(b)(3), Defendants also suggest that venue *could be* appropriate in West Virginia based upon the contention that: (1) the examination report underlying ATF"s classification decision was "*completed*" in Martinsburg, West Virginia; (2) classifications are a "*function*" of ATF headquarters [in Washington D.C.], although the "*physical location*" of the examination facility is in West Virginia; and (3) the investigation also involved ATF's Internet Investigations Center in Washington, D.C. (Dkt. 21 at 23, n. 11.) (Emphasis added.) Despite Defendants' careful wordsmithing, these allegations do not establish any of those locations have a close nexus to this case for purposes of 1391(e)(1)(B) because they do not establish the challenged actions of Defendants occurred in these locations.[3]

---

[3] Under Section 1404(a), Defendants again, without any sworn supporting statements and without any detail whatsoever, contend "the investigation and cease-and-desist letter to [Plaintiff] were *handled* by the ATF in Tampa, and the ATF agents who are *familiar* with this case are thus based in Tampa." (Dkt. 21 at 28.) (Emphasis added.) They also contend "ATF employees

5

Plaintiff is entitled to know where the testing, analyzing and decision making at issue in this case took place, and who was involved in directing it, because facts would establish where the substantial portion of the events giving rise to this case occurred and where alternative venues lies for purposes of responding to Defendants' Motion. Only when that venue-related discovery is complete will Plaintiff have these answers and be able to properly respond to the Defendants' allegations, and only then will the Court have the information it needs to make a substantive analysis under Sections 1391(e)(1)(B) and Section 1404(a).

In addition, it cannot be overlooked that Plaintiff's lawsuit also addresses multiple procedural due process violations in this case leading up to the classification of the FRT-15 as a "machinegun," as well as after the July 26, 2021 cease-and-desist letter was given to Plaintiff, and both before and after the Middle District of Florida action was commenced and concluded. And for purposes of determining proper venue under 1391(e)(1)(B), the place where a substantial portion of the events giving rise to claims occurs it is not determined by where Plaintiff suffered injury. Rather, it is determined by where Defendants' wrongful actions and omissions took place.

Thus, with regard to the due process violations, someone on Defendants' side was issuing the orders for the ATF to commit these intentional due process violations, and the name of the

---

in West Virginia and Washington, D.C. *worked on* the investigation into and classification of the FRT-15." (Dkt. 21 at 28, n. 14.)

Not breaking with their obfuscation practices, Defendants do not identify these alleged agents, disclosing only Special Agent in Charge Saier. But Saier admitted that he was told by his "chain of command" to sign the cease-and-desist letter, that he did not *handle* the examination of the FRT-15 leading to the classification report, that he was not *familiar* with the classification report or the facts or data supporting it, and had not so much as seen the classification report. Defendants do not define what "handled" or "worked on" mean and Plaintiff is entitled to find out during discovery so that it may challenge the Section 1391(e)(1)(B) and Section 1404(a) assertions.

person who issued those orders and the location where that person was operating from are directly relevant to issues under Section 1391(e)(1)(B) and Section 1404(a). Plaintiff incorporates here by reference the very detailed allegations of paragraphs 143 through 194 of the Complaint, but to summarize those allegations: (i) Plaintiff was not told by Defendants that the FRT-15 was ever being examined as a potential "machinegun" and so was never given any notice or opportunity to be heard during whatever administrative process the ATF was undertaking that lead to the examination report and the cease-and-desist order at issue; (ii) after the cease-and-desist order was given to the Plaintiff, Defendants repeatedly rejected Plaintiff's requests that Defendants review the reports of Plaintiff's nationally recognized experts (all former ATF agents) stating the FRT-15 was not a "machinegun" under applicable law and reconsider the finding as to the FRT-15; and (iii) Defendants closed the administrative record before the Plaintiff was ever allowed to respond to the ATF's examination report and thereby denied the Plaintiff any meaningful opportunity to respond or to have a fair hearing.[4]

Perhaps sensing this argument, Defendants also contend that "to the extent that Plaintiff's due process claims arise out of the proceedings in the first action, those events took place in the Middle District of Florida (as discussed below, [Plaintiff] was registered as a business in Florida until November 2021)." (Dkt. 21 at 23-24.). This is nonsensical. Plaintiff does not contend that it was denied procedural due process *by the Court* in the Middle District of Florida action.

In fact, before that action was dismissed on a procedural technicality without reaching the merits, the Honorable Carlos Mendoza realized at the October 6, 2021 hearing that Defendants

---

[4] In reviewing a Rule 12(b)(3) motion, courts apply the same standard used in other motions to dismiss, including construing all facts in the light most favorable to the non-moving party and taking the allegations in the complaint as true. *Spanier v. Am. Pop Corn Co.*, No. 15-4071, 2016 U.S. Dist. LEXIS 50071, *10 (N.D. Iowa April 14, 2016).

had refused to include Plaintiff's experts' rebuttal reports in the administrative record or consider any of the Plaintiff's evidence (including their experts' initial reports) in its making of the classification decision, and thus the court allowed the Plaintiff to present its expert testimony at that hearing. (Dkt. 21-2 at 21: l. 6-25; 22: l: 1-13; 39: l. 11-19; 44: l. 20-25.). Based upon this, Judge Mendoza gave Plaintiff the opportunity to file a motion to remand the classification decision to the ATF so the agency could review Plaintiffs' experts' reports and issue a different classification decision on the FRT-15's status as an alleged "machinegun."[5] (Dkt. 21-2 at 47: l. 21-25; 48: l. 1. 1-19; 55: l. 8-1-17.). Before the remand motion could be filed, however, the action was dismissed without prejudice on October 28, 2021. And the due process violation that occurred next, like the previous violations, are directly relevant to the issue of where the decisions were made to deny Plaintiff's rights and thereby to the Section 1391(e)(1)(B) and Section 1404(a) issues.

Specifically, on November 2, 2021 (four days after dismissal), Maxwell, as counsel for Plaintiff, wrote Saier, referencing the remand opportunity, asking that ATF accept Plaintiff's original expert reports, dated before the issuance of the July 26, 2021 cease-and-desist letter, as well as Plaintiff's additional expert reports written in rebuttal to the ATF's examination report related to the FRT-15 and add them to the administrative record. The letter attached *all* Plaintiff's expert reports. (Dkt. 1-16.) Nearly two weeks later, on November 15, 2021, Saier responded by letter stating, *inter alia*, that he had forwarded Maxwell's November 2, 2021 expert report package "to ATF's Firearms and Ammunition Technology Division (FATD)," the same entity which purportedly classified the FRT-15 as a "machinegun." (Dkt. 1-17.) On December 21, 2021, after

---

[5] Plaintiff made *an ore tenus* request for remand to the ATF at the hearing, but the Judge Mendoza only provided the opportunity for a written motion. (Dkt. 21-2 at 47: l. 2-16.)

hearing nothing from FATD or ATF, Maxwell wrote Saier asking if he had received any response from the FATD and stated that Plaintiff "may be forced to take this matter back up as a (sic) litigation" depending on FATD's position. (Dkt. 1-18.) Maxwell was following up on this because he believed that the ATF was considering his submissions (*i.e.*, giving him a meaningful opportunity to be heard) and that ATF may change the classification decision after giving reasoned consideration to his evidence. And that belief was reasonable because ATF knew that during the Fall of 2021, the Plaintiff was still selling thousands of FRT-15's per week with absolutely no enforcement activity taking place by Defendants.

But the ATF never took Maxwell's submissions into account and it never reconsidered the classification decision. Instead, as detailed in the Complaint, through acts beginning in January 2022 and culminating in a raid of Plaintiff's only supplier on March 26, 2022, Defendants put Plaintiff out of business. For that reason, the Plaintiff is entitled to know where and by whom the decisions were made to deny procedural due process both before *and after* the Middle District of Florida litigation.

### III. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court grant this Motion and allow venue discovery. Further, because the venue discovery is necessary for Plaintiff's opposition to Defendants' pending Motion, Plaintiff further respectfully requests that this matter be stayed until the venue related discovery is complete. At that point, Plaintiff will be able to respond to Defendants' Section 1391(e)(1)(B) and 1404(a) arguments.

STATE OF FLORIDA

COUNTY OF SEMINOLE

The foregoing was sworn to and acknowledged before me by means of physical presence, on this 12th day of September, 2022, by KEVIN C. MAXWELL, who gave an oath swearing to the truth of the factual statements made herein, and who is ✓ personally known to me **OR** ____ who has produced the following identification:_____.

_____
KEVIN C. MAXWELL

_____
Notary Public
Jennifer Corcoran
Printed Name

My commission expires: Nov 6, 2023

JENNIFER CORCORAN
MY COMMISSION #GG929559
EXPIRES: NOV 06, 2023
Bonded through 1st State Insurance

Respectfully submitted,

Dated: 09/12/22

/s/ Joseph Blitch
**JOSEPH E. BLITCH**
Florida Bar No. 40592
9100 Conroy Windermere Rd., Ste. 200
Windermere, Fl. 34786
Tel (407) 574-2853
jblitch@bwesq.com
Attorney for Plaintiff

/s/ Kevin C. Maxwell
**KEVIN C. MAXWELL**
Florida Bar No.: 0604976
255 Primera Blvd. Ste 160
Lake Mary, FL 32746
Tel. (407) 480-2179
kevin@kmaxwellesq.com
Lead Attorney for Plaintiff