IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Rare Breed Triggers, LLC, a North Dakota Limited Liability Company,<br><br>        Plaintiff,<br><br>vs.<br><br>Merrick Garland, in his official capacity as Attorney General of the United States, et al.,<br><br>        Defendants. | Case No. 3:22-cv-85<br><br>**ORDER** |

Plaintiff Rare Breed Triggers, LLC, (Rare Breed), filed a complaint under the Administrative Procedure Act (APA) against defendants Attorney General Merrick Garland, the Department of Justice, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and Acting Director of ATF Marvin Richardson (collectively, the United States). The United States moves under Federal Rule of Civil Procedure 12 to dismiss or transfer for improper venue, among other bases. (Doc. 20). Both parties consented to magistrate judge jurisdiction. (Doc. 7; Doc. 13).

**Background**

According to the complaint, Rare Breed is a North Dakota company that holds the exclusive right to sell and market the FRT-15.[1] "FRT" is an acronym for "forced reset trigger," which "is designed for use in certain semiautomatic rifles." (Doc. 1, p. 3). The

---

[1] Prior to December 7, 2021, Rare Breed was a Florida LLC. On December 7, representatives of Rare Breed, the Florida LLC, merged the company into a newly formed North Dakota LLC of the same name. (Doc. 30-1, pp. 9, 11). Plaintiff Rare Breed is now solely a North Dakota LLC. Throughout this order, "Rare Breed" refers to both the North Dakota LLC and the former Florida LLC.

FRT-15 "force[s] mechanical reset of the trigger into the trigger forward, ready to fire position, allowing for quicker follow up shots." Id.

On July 27, 2021, an agent from ATF's Tampa Bay, Florida, office hand-delivered a classification letter to Kevin Maxwell, owner and general counsel of Rare Breed.[2] Id. The classification letter stated ATF had concluded the FRT-15 was a "machinegun" for purposes of the National Firearms Act, 26 U.S.C. § 5845(a)(6), and the Gun Control Act, 18 U.S.C. § 921(a)(23). As a result of ATF's classification, the FRT-15, and consequently Rare Breed, was subject to a plethora of statutory and regulatory requirements, and failure to abide by those requirements, the letter explained, could result in civil or criminal penalties. (Doc. 1-1, p. 2). In the letter, ATF ordered Rare Breed to "cease-and-desist all manufacture and transfer" of the FRT-15. Id.

Shortly thereafter, on August 2, 2021, Rare Breed filed a complaint in the Middle District of Florida against the defendants here and the agent who delivered the classification letter to Maxwell. (Doc. 1, p. 7). Rare Breed challenged the classification under the APA, asserting it was arbitrary and capricious and outside of ATF's statutory authority. See Rare Breed Triggers, LLC v. Garland, 6:21-cv-1245, Doc. 7 (M.D. Fla. Aug. 3, 2021). Rare Breed then moved for a temporary restraining order and a preliminary injunction to halt ATF's enforcement of its classification of the FRT-15 as a machinegun.

---

[2] There is no requirement that an organization seek an ATF classification of its product, though the ATF recommends it. If an organization does not affirmatively seek a classification, ATF may nonetheless classify the organization's product through a classification letter, which is what happened in this case. In general, an ATF classification letter "may generally be relied upon by their recipients as the agency's official position concerning the status of the firearms under Federal firearms laws." See National Firearms Act Handbook § 7.2.4 (2009), Bureau of Alcohol, Tobacco, Firearms and Explosives https://www.atf.gov/firearms/national-firearms-act-handbook (select "Download the complete NFA Handbook").

The district judge denied both motions. Rare Breed Triggers, LLC v. Garland, No. 6:21-CV-1245, 2021 WL 7543623 (M.D. Fla. Aug. 5, 2021) (order denying motion for temporary restraining order); Rare Breed Triggers, LLC v. Garland, No. 6:21-CV-1245, 2021 WL 4750081 (M.D. Fla. Oct. 12, 2021) (order denying motion for preliminary injunction). On October 28, 2021, the district judge sua spone dismissed the case, without prejudice, for failure to follow local procedural rules. Rare Breed Triggers, 6:21-cv-1245, Doc. 75.

Nine days later, on November 7, 2021, representatives of Rare Breed, then a Florida company, filed articles of organization in North Dakota for an LLC of the same name. (Doc. 30-1, p. 9). On December 7, 2021, the Florida company was merged into the newly formed North Dakota LLC. Id. at 11.

On May 16, 2022, Rare Breed, now solely a North Dakota LLC, filed a complaint in this district challenging the classification of the FRT-15 as a machinegun under the APA. (Doc. 1, pp. 43-61). Rare Breed asserts the classification was arbitrary and capricious, improperly relied on ATF's unlawful 'bump-stock' regulation, and violated the Due Process clause of the Fifth Amendment. Id. Rare Breed also asserts various claims under the APA related to ATF's seizure of property of 3rd Gen Machine, Inc., its primary manufacturer of FRT-15 triggers, as well as for other relief. Id.

The United States filed a motion to dismiss or transfer based on improper venue, lack of standing, and failure to state a claim upon which relief can be granted. (Doc. 20). Rare Breed responded and filed a separate motion to conduct venue-related discovery and to stay the case until such discovery is complete. (Doc. 28; Doc. 30). Rare Breed also filed a motion for oral argument, (Doc. 43), which the United States opposed, (Doc. 44).

## Law and Discussion

The court begins with consideration of the United States' Rule 12(b)(3) motion to dismiss or transfer due to improper venue. Venue is a "threshold, nonjurisdictional issue" that involves a determination of whether "the merits should be adjudicated elsewhere." Chevron U.S.A. Inc. v. Env't Prot. Agency, 45 F.4th 380, 385 (D.C. Cir. 2022). In other words, "[v]enue concerns the appropriate district court in which an action may be filed." Pacer Glob. Logistics, Inc. v. Nat'l Passenger R.R. Corp., 272 F. Supp. 2d 784, 788 (E.D. Wis. 2003). "One of the central purposes of statutory venue is to ensure that a defendant is not haled into a remote district having no real relationship to the dispute." Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995) (citation and internal quotation marks omitted). To that end, a determination of improper venue leaves a court with two options: it can either dismiss the case or transfer it to a district where venue is proper. See 28 U.S.C. § 1406(a).

The parties dispute who bears the burden of showing whether venue is proper or improper. (See Doc. 30, p. 11; Doc. 33, p. 7). Courts in the Eighth Circuit, too, "have disagreed as to . . . who has the burden to demonstrate whether venue is proper or improper." Coug & Co., Inc. v. Cougar Paws, Inc., No. 4:21-CV-271, 2022 WL 1439848, at *6 (S.D. Iowa Jan. 5, 2022). In general, "[t]he weight of judicial authority appears to be that when the defendant has made a proper objection, the burden is on the plaintiff to establish that the chosen district is a proper venue." Charles Alan Wright et al., 14D Federal Practice and Procedure, § 3826 (4th ed. Apr. 2022 update). That approach is consistent with allocation of the burden regarding other Rule 12 motions. See e.g., Neb. Beef Producers Comm. v. Neb. Brand Comm., 287 F. Supp. 3d 740, 747 (D. Neb. 2018) ("The party asserting subject matter jurisdiction bears the burden of proof."). For those

4

reasons, this court concludes the burden of showing that venue is proper in this district lies with Rare Breed. See Fed. Trade Comm'n v. BINT Operations LLC, No. 4:21-CV-00518-KGB, 2022 WL 990276, at *8 (E.D. Ark. Mar. 31, 2022) (citing Cohen v. Newsweek, Inc., 312 F.2d 76, 78 (8th Cir. 1963)). In any event, because the parties here agree on the relevant facts, which party bears the burden of showing the propriety of venue is immaterial.

The court will assess whether venue is proper in this district based on the circumstances as they currently exist. Daughetee v. CHR Hansen, Inc., No. C09-4100, 2011 WL 1113868, at *4 (N.D. Iowa Mar. 25, 2011). In deciding whether venue is proper, a court a may rely on matters outside the pleadings. Id. at 2.

1. **The Federal Venue Statute**

The federal venue statute, codified at 28 U.S.C. § 1391, describes the requirements for proper venue. Because the defendants are an agency and officials of the United States, § 1391(e)(1) gives the relevant rule:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

Thus, to establish proper venue in this district, Rare Breed must show either (a) a defendant resides in the District of North Dakota, (b) a substantial part of the events giving rise to its claims arose in the District of North Dakota, or (c) it resides in the District of North Dakota.

### A.     Sections 1391(e)(1)(A) and 1391(e)(1)(B)

Rare Breed does not assert venue can be established through either of the first two options—§ 1391(e)(1)(A) or § 1391(e)(1)(B). Federal officials are residents of the district where a "significant amount" of their duties are performed. See Smith v. Dalton, 927 F. Supp. 1, 6 (D.D.C. 1996). The defendants, all federal agencies or officials, appear to reside in Washington, D.C., for venue purposes. No party asserts defendants reside in North Dakota. Nor does either party assert a substantial part of the events giving rise to the litigation occurred in this district. The United States asserts any testing of the FRT-15 occurred in Martinsburg, West Virginia. (Doc. 31, p. 7). ATF's classification letter was delivered from its office in Tampa Bay, Florida. The challenged "bump-stock" regulation was issued from ATF's Washington, D.C., headquarters. And the events alleged in the complaint regarding 3rd Gen Machine, Inc., occurred in Logan, Utah. (Doc. 1, pp. 3, 9, 11).

Indeed, Rare Breed filed a motion to conduct venue-related discovery to establish "where the substantial portions of events giving rise to this case occurred and where alternative venue lies." (Doc. 28, p. 6). But the motion does not contemplate discovery of any facts related to establishing venue in this district and the complaint (outside of Rare Breed being a North Dakota LLC) pleads no facts tying the company to this district. (See Doc. 1). In short, no party asserts a substantial portion of the events giving rise to this case occurred in North Dakota.

The only remaining possible basis for venue, then, is § 1391(e)(1)(C)—whether "the plaintiff resides" in this district. Whether a plaintiff resides in a particular district is determined according to § 1391(c). Section 1391(c)(2) states "an entity with the capacity to sue and be sued . . . , whether or not incorporated, shall be deemed to reside . . . if a

6

plaintiff, only in the judicial district in which it maintains its principal place of business." In other words, Rare Breed must establish its "principal place of business" is in the District of North Dakota to show venue is proper.

### B.  Section 1391(c)(2)

The federal venue statute directs the court to determine Rare Breed's residence by determining its principal place of business. The phrase "principal place of business" is more often used in a jurisdictional context rather than in the context of venue. The federal diversity jurisdiction statute, for example, provides that a corporation is a "citizen" of every state where "it has been incorporated" and where "it has its principal place of business." 28 U.S.C. § 1332(c)(1). In Hertz v. Friend, the Supreme Court interpreted "principal place of business" in the federal diversity jurisdiction statute to be "the place where a corporation's officers direct, control, and coordinate the corporation's activities." 559 U.S. 77, 92-93 (2010).

Several courts have applied Hertz to determine "principal place of business" for purposes of the federal venue statute.³ See Ariz. Yage Assembly v. Barr, No. 3:20-CV-03098, 2020 WL 5629833, at *15 (N.D. Cal. Sept. 21, 2020); Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of N.Y., No. 19CV6004, 2020 WL 4194729, at *10 (S.D.N.Y. July 21, 2020); RAJMP, Inc. v. United States, No. 18-CV-03045, 2019 WL 2613304, at

---

³ Different tests are employed to determine an LLC's residence for venue and jurisdictional purposes. For jurisdiction, an LCC's residence, unlike a corporation's, is determined by the residence of its members—not its state of organization or principal place of business. See GMAC Com. Credit LLC v. Dillard Dep't Stores, Inc., 357 F.3d 827, 829 (8th Cir. 2004). For venue, however, § 1391(c) provides an entity's residency "whether incorporated or not" is determined, if a plaintiff, by its principal place of business. Because § 1391(c) covers entities incorporated and unincorporated, its covers LLCs. See Monster Energy Co. v. Martin, No. EDCV1701677, 2017 WL 10434400, at *2 (C.D. Cal. Nov. 30, 2017) (stating § 1391(c) applies to LLCs "by its plain language").

*2 n.4 (D. Colo. May 9, 2019). Courts presume consistent language usage across statutes of similar subject matter: "[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." Hammond v. Stamps.com, Inc., 844 F.3d 909, 911 (10th Cir. 2016) (citation and internal quotation marks omitted). Under Hertz, Rare Breed's residence for venue purposes would be the place where its "officers direct, control, and coordinate" its activities. 559 U.S. at 92-93.

      Rare Breed offers two arguments against applying Hertz to determine its principal place of business under § 1391(c)(2). First, it cites Flowers Indus., Inc. v. F.T.C., which held "a corporation resides only in the state in which it is incorporated" for venue purposes. 835 F.2d 775, 777 (11th Cir. 1987). But, as the United States points out, the federal venue statute, 28 U.S.C. § 1391, has been amended multiple times since Flowers was decided—most recently in 2011. The 2011 amendments added the language at issue here, namely that an entity "whether or not incorporated, shall be deemed to reside . . . if a plaintiff, only in the judicial district in which it maintains its principal place of business." See Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 202, 125 Stat. 758, 763 (2011). Under the language of § 1391(c)(2), Rare Breed's residence must therefore be determined by its principal place of business rather than by its state of organization.[4]

---

[4] Rare Breed points out the United States has relied on Flowers in recent, unrelated litigation. (Doc. 30-2; Doc. 30-3). Rare Breed argues "the change in the law that occurred in 2011 does not explain why the DOJ made those arguments in 2013 and 2021." (Doc. 42, p. 3). The United States is not bound by its arguments in unrelated litigation.

Recognizing the court must determine its principal place of business, Rare Breed argues it is an inactive company and thus without a principal place of business. (Doc. 30, p. 13). At the time the United States filed its motion, Rare Breed contends it "had no wares to sell, no vendors to manage, no markets to consider, and no products to develop." Id. Rare Breed asserts it "was adrift with no base of operations, leaving only its ties to North Dakota." Id. at 11.

Rare Breed cites cases from various circuits holding an inactive corporation—that is, a corporation without an operating principal place of business—resides for jurisdictional purposes in the state of its incorporation or where it last conducted business. See Midlantic Nat. Bank v. Hansen, 48 F.3d 693, 696 (3d Cir. 1995); see also Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc., 933 F.2d 131, 141 (2d Cir. 1991). Rare Breed contends the same analysis should apply for venue purposes. And because it is an inactive company, Rare Breed argues the court should determine it is a resident of North Dakota. Rare Breed's state of organization is North Dakota, and it asserts it last transacted business in North Dakota by paying rent for an office in Fargo, North Dakota, receiving its mail at that office, and filing quarterly state tax returns. (Doc. 30, p. 15; Doc. 42, p. 5 n.2). Further, Rare Breed asserts it changed its shipping return address to its Fargo office and stated in its contract terms and conditions that "venue would lie in North Dakota for any disputes." (Doc. 30, p. 10).

The cases Rare Breed cited concerning inactive corporations are distinguishable. First, Rare Breed is a limited liability company, not a corporation. For jurisdictional purposes, a corporation is a resident of both the state of its incorporation and the state of its principal place of business. A limited liability company, however, is a citizen of the state or states where its members reside. GMAC Com. Credit LLC v. Dillard Dep't Stores,

9

Inc., 357 F.3d 827, 829 (8th Cir. 2004). Because of this distinction, the court cannot apply a jurisdictional test crafted for inactive corporations to a limited liability company. Moreover, the residency analysis here is to determine venue—not jurisdiction. The reason Rare Breed's principal place of business is relevant is because the federal venue statute specifically provides an entity, "whether or not incorporated," is a resident of the "judicial district of its principal place of business." See 28 U.S.C. § 1332(c)(1).

Even if Rare Breed were an inactive company with no principal place of business, venue would be improper in this district. Section 1391(c)(2) provides an entity, if a plaintiff, resides "only in the judicial district in which it maintains its principal place of business" and does not provide an alternative basis for determining residence. See 28 U.S.C. § 1391(c) (emphasis added). Without a principal place of business to establish venue in this district, Rare Breed must show either a defendant resides in this district or a substantial portion of the events giving rise to its claims arose in this district. Id. § 1391(e)(1)(A)-(B). And as discussed above, Rare Breed has not made either showing.

The court has sufficient information to determine whether Rare Breed's principal place of business is in this district.[5] Applying Hertz, Rare Breed's principal place of business is the place where its "officers direct, control, and coordinate the [company's]

---

[5] In First State Ins. Co. v. XTRA Corp., the court stated applying Hertz to an alleged inactive corporation "accords with the intent of the Supreme Court to establish 'straightforward rules' under which district courts 'can readily assure themselves of their power to hear a case.'" 583 F. Supp. 3d 313, 317 (D. Mass. 2022) (quoting Hertz Corp., 559 U.S. at 94). Applying Hertz, the court proceeded to determine the principal place of business for a corporation which had not engaged in business activities for over twenty years. Id. at 316-17. By contrast, Rare Breed was engaged in business at least as recently as 2021. Further, Rare Breed recently obtained a preliminary injunction against a former distributor for patent infringement in the Northern District of Florida and continues to litigate that case. See Rare Breed Triggers, LLC, et al. v. Big Daddy Enters., Inc., No. 1:21-cv-149 (N.D. Fla. Sept. 15, 2021).

activities." 559 U.S. at 92-93. The Supreme Court has cautioned against finding a principal place of business that is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat." Id. at 97. In such a situation, a court should instead look to "the place of actual direction, control, and coordination." Id.

The United States asserts Rare Breed's Fargo office is merely a mailing address but no physical space. (Doc. 21, p. 26). Rare Breed does not dispute that assertion. Maxwell, Rare Breed's owner and general counsel, submitted an affidavit stating he secured a "virtual office" in Fargo, intended to be only a "placeholder" for an eventual residency. (Doc. 30, p. 9). It does not appear that residency has been established. In its brief, Rare Breed writes that in January 2022, Maxwell ran the "business remotely . . . from Florida (where Maxwell resides) . . . with an eye toward Maxwell moving to North Dakota." Id. at 10-12. Maxwell's affidavit also indicates he had "made the decision to move to North Dakota" but does not state he has a physical presence in the state. (Doc. 30-1, p. 3). And, in a recent request for extension of time to file a responsive brief, Maxwell represented that he currently lives in Seminole County, Florida. (Doc. 32, p. 1). Further, in its brief, Rare Breed states its president, Lawrence DeMonico, resides in Texas. (Doc. 30, p. 10).

Rare Breed may be a North Dakota company but "the place of [its] actual direction, control, and coordination" is not North Dakota. See Hertz Corp., 559 U.S. at 97 (2010). Rare Breed's principal place of business appears to be in the Middle District of Florida, where Maxwell resides and where Rare Breed previously brought suit against the United States. For those reasons, venue in this district is improper.

**2.     Rare Breed's Motion to Conduct Venue-Related Discovery**

Rare Breed moves to conduct discovery to establish where a "substantial portion" of the events giving rise to the litigation occurred and thus where venue may be proper under § 1391(e)(1)(B).[6] (Doc. 28). Specifically, Rare Breed "requests a 90-day period to conduct such discovery" and take the deposition of Firearms Examination Officer David Smith, who signed the examination report of the FRT-15, and a Rule 30(b)(6) deposition of ATF. (Doc. 38, p. 6). In its brief, Rare Breed states that "[o]nly when venue-related discovery is complete" will it be able to respond to the United States' motion to dismiss or transfer the case because of improper venue. (Doc. 28, p. 6). The United States questions the efficacy of any discovery, asserting Rare Breed is in possession of the information it seeks, and the administrative record is available. (Doc. 31, pp. 7-8).

"District courts have broad discretion in determining whether to grant limited discovery to explore jurisdictional facts (including venue)." Green Source Holdings, LLC v. Ingevity Corp., No. 1:18-CV-1067, 2019 WL 1995402, at *5 (W.D. Ark. May 6, 2019). For present purposes, the question is whether venue can be established in this district—not "whether other forums have greater contacts." Johnson v. Emerson Elec. Co., No. 4:13-CV-1240, 2013 WL 5442752, at *4 (E.D. Mo. Sept. 30, 2013). In addition, discovery is not permitted in cases brought under the APA absent extraordinary circumstances. See Breaker v. United States, 977 F. Supp. 2d 921, 936 (D. Minn. 2013). Rare Breed does not assert any venue-related discovery might reveal defendants are residents of North

---

[6] The United States asserts Rare Breed did not confer with it prior to filing the motion, in violation of Civil Local Rule 37.1. See D.N.D. Civ. L.R. 37.1. Rare Breed argues it need not follow Local Rule 37.1 because venue-related discovery would require court approval. (Doc. 38, p. 2). Local Rule 37.1 requires conferral between parties on discovery-related disputes even if court approval would be required for the parties' proposed solution. Nevertheless, the court considers Rare Breed's motion.

12

Dakota, a substantial portion of the events giving rise to its claims occurred in North Dakota, or it is a resident of North Dakota. Rather, Rare Breed seeks facts that would establish "where alternative venue lies." (Doc. 28, p. 6). In its brief, Rare Breed states "the purpose of the requested venue-related discovery is to ascertain where venue would be appropriate . . . *if* this Court finds venue in inappropriate in this District." (Doc. 38, p. 3).

Courts do not permit discovery to establish where alternative venue may lie. See Green Source Holdings, 2019 WL 1995402, at *5 (denying motion for venue-related discovery because movant failed to indicate any specific facts that would establish venue in that district); see also Symbology Innovations, LLC v. Lego Sys., Inc., 282 F. Supp. 3d 916, 934 (E.D. Va. 2017) (denying motion for venue-related discovery because movant did not offer "a basis to believe discovery will yield information supporting venue under any factor."). Permitting discovery to establish where venue might be proper would "recreate the inconvenience that venue rules are intended to prevent—the defendant would still be required to litigate in an inconvenient district." Id. at 934. Rare Breed's motion for venue-related discovery, motion to stay the case pending that discovery, and motion for oral argument will be denied.

### 3.     **Dismissal or Transfer under 28 U.S.C. § 1406(a)**

Having determined venue is improper in this district, the court must either dismiss the case or transfer the case to a court where venue is proper. See 28 U.S.C. § 1406(a). "If the court transfers the case, the case must be sent to any district or division in which it could have been brought." Wells Fargo Bank, N.A. v. Caballero, No. 4:19-CV-04141, 2020 WL 907544, at *4 (D.S.D. Feb. 25, 2020) (citation omitted). Although the decision to transfer or dismiss is committed to the court's discretion, "the

interest of justice generally requires transferring a case to the appropriate judicial district in lieu of dismissal." Frazier v. Eagle Air Med Corp., No. 3:21-CV-136, 2022 WL 1303070, at *9 (D.N.D. May 2, 2022). In considering where to transfer a case, "federal courts give considerable deference to a plaintiff's choice of forum." Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997).

As the United States points out, districts with proper venue appear to be the Middle District of Florida, where Maxwell appears to reside, and the District for the District of Columbia, where the defendants reside. That said, Rare Breed's motion for discovery to establish an alternative venue indicates it does not wish the court to transfer the case to Middle District of Florida or to the District for the District of Columbia. (Doc. 28). For that reason, the court will dismiss the complaint to allow Rare Breed to file in another district where venue is proper.

## Conclusion

For the reasons discussed above, the United States' motion to dismiss for improper venue under Federal Rule of Civil Procedure Rule 12(b)(3), (Doc. 20), is **GRANTED**. In light of that decision, it is not necessary to consider the other grounds for dismissal that the United States raises. Rare Breed's motions for venue-related discovery and to stay the case pending that discovery, (Doc. 28), are **DENIED**. Given the parties' extensive briefing, Rare Breed's motion for oral argument, (Doc. 43), is **DENIED**. Rare Breed's complaint is **DISMISSED** without prejudice.

**JUDGMENT SHALL BE ENTERED ACCORDINGLY.**

Dated this 4th day of November, 2022.

*/s/ Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge